## William D. Wallace *v.* David Jameson, Sarah G. Treadwell, and Alliene W. Treadwell, Appellants.

*Change of venue—Statutes—Acts of March 22, 1856 and March 30, 1875.*

Under the act of April 22, 1856, P. L. 500, relating to change of venue, the president judge may certify his disability, and then must order the case to be heard before "the president judge residing nearest the place of such trial, who shall be disinterested." By the act of March 30, 1875, P. L. 35, either party may by petition apply for a change of venue. *Held,* (1) that there is no repugnancy in the two remedies; (2) that the act of March 30, 1875, is cumulative, and was not intended to repeal or supersede the act of March 22, 1856; (3) that the remedy which is first applied must thereafter necessarily be exclusive in the particular case; (4) that when a case is properly certified by an interested judge to the nearest judge, under the act of March 22, 1856, there is no longer any room for the intervention of the act of March 30, 1875; (5) that the provisions of the act of March 30, 1875, show that an application for a change of venue should be promptly made, and should not be deferred until the trial is actually called with a jury at hand.

The plaintiff in an action of trespass who was the president judge of the district certified the case to the nearest judge under the act of March 22,

1856. Subsequently a petition for change of venue was presented to the plaintiff, as judge, who referred it to the judge to whom the case had.been already certified, and the latter refused it on the ground that it was already before a judge appointed by law to try it, and who was disinterested. *Held,* not to be error.

*Change of venue—Disqualification of judge.*

Objections which merely relate to the judge's personal opinions or feelings, and not to his legal interest in the case or the question, are not within the statute relating to change of venue, and must be addressed to his discretion.

A case was certified by an interested judge to the next nearest judge. The defendants filed a plea to the jurisdiction of the court as constituted, asserting the disqualification of the judge to whom the case was certified, on the ground that he was "not an impartial, unprejudiced and indifferent judge in respect to the matters in issue." The action was trespass for libel, and the only evidence produced in support of the plea was a letter from the judge to one of the defendants calling his attention to some articles in a newspaper, and expressing the opinion that he could and did sometimes control the columns of the paper, and could put a stop to this if he wished to. Neither the letter nor the matters referred to in it had any connection with the pending suit, nor did they in any way show any interest which disqualified the judge. *Held,* that the plea was properly overruled.

*Practice, C. P.—Quashing the array of jurors.*

A motion to quash the array of jurors should be made as soon as the facts which warrant it are known. In an action of trespass for libel the president judge of the courts of the county was the plaintiff. More than a year after the case was at issue five hundred names were placed in the jury wheel, and the selection of them was the joint work of the president judge and the county commissioners, the judge being present only a portion of the time. The case came on for trial about five months after the names were .placed in the wheel, and the judge had nothing to do with drawing the names for the particular panel for the term in which his case came on for trial. When the case was about to be called for trial the defendants moved to quash the array. *Held,* (1) that the motion to quash the array was made too late; (2) that even if the motion had been promptly made and overruled, the action of the court under the circumstances would not warrant a reversal of the judgment on a verdict rendered at the trial; (3) that if the defendants thought themselves in any danger from a jury of the county drawn out of the five hundred names so selected, there was ample remedy in a timely application for a change of the venue to an indifferent county.

*Libel—Evidence—Review.*

In an action for libel, exception was taken to the admission of the question put to one of the defendants whether he wrote or caused the publication of an editorial in a newspaper subsequent to the alleged libel. He

answered that he had not, and the article was not offered in evidence. *Held,* that as the question whether the editorial was competent evidence or not depended on matters which did not appear, it not having been shown in the exception that defendants were injured, the admission of the question was not ground for reversing a judgment for plaintiff.

*Libel—Attorney at law—Corrupt misconduct—Bribery.*

To impute corrupt or dishonorable action to an attorney in his professional conduct is actionable *per se* though it falls short of bribery.

*Libel—Privileged communication—Newspaper.*

A privileged communication being one made upon a proper occasion, from a proper motive, based upon reasonable or probable cause, and in a proper manner, it follows that if the manner be improper the privilege is lost.

*Libel—Candidate for public office—Privileged communication—Newspaper.*

Where a person is a candidate for public office, his character and conduct are proper subjects of public discussion, and the publication of any facts throwing light on his qualifications or disqualifications will be privileged; but a highly sensational and damaging account of an alleged illegal transaction, with mention and reference to the candidate as being connected with and a party thereto, is not privileged.

*Libel—Parties—Newspaper—Political candidate—Question for jury.*

In an action for libel by a candidate for judge against the proprietors of a newspaper, J., who was one of the executors of the former owner of the paper, was joined as a party defendant. There was evidence that J. was to have control of the political columns of the paper in the campaign, so far at least as related to the candidacy of the plaintiff for the judgeship. *Held,* that the question whether J. exercised his control in such manner as to make him jointly liable for the publication, was a question for the jury.

*Libel—Express malice—Bribery—Privilege—Question for jury.*

In an action for libel against a newspaper it is competent for the plaintiff to show as evidence of express malice, as bearing on the question of damages, that the newspaper had challenged him to explain his connection with the alleged bribery in the publication complained of, and when he offered the explanation fortified by affidavits, the paper refused to publish it, even as a paid advertisement.

In an action by a candidate for a judgeship against a newspaper for libel, the publication complained of gave a sensational account of the hearing of a suit against the mayor of a city to recover money alleged to have been paid the mayor for the settlement of a criminal proceeding. The article proceeded to state that the alleged settlement had been made in the office of the plaintiff "the regular republican candidate for president judge," and that the receipt from the alleged go-between was written in the back room "of this attorney's office on letter paper belonging to" the plaintiff. There was a further statement from which the inference could

be drawn that the plaintiff secured fifty dollars in the transaction. The article was preceded by sensational headlines in bold face type as follows: " Who got the $50 ?—Sensational Evidence Admitted in the Famous Suit Against the Mayor—W. D. Wallace's Office ! " *Held,* (1) that the question whether the publication charged bribery was for the jury ; (2) that the publication was not privileged ; (3) that while a fair account of the transaction which was the basis'of the publication would have been privileged, the manner and style of the account or comment were for the consideration of the jury to determine if the privilege had been exceeded ; (4) that a verdict and judgment for plaintiff should be sustained.

*Practice, S. C.—Assignments of error—Nonsuit.*

The refusal of a nonsuit by the trial court is not the subject of review by the Supreme Court.

Argued Oct. 13, 1896.   Appeal, No. 117, Oct. T., 1896, by defendants, from judgment of C. P., Lawrence County, Dec. Term, 1894, No. 54, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for libel.

It appeared from the record that suit was begun on October 25, 1894.   Subsequently the plaintiff was elected president judge of Lawrence county.

April 27, 1896, the case was on trial list.

Judge Wallace made the following order:

" Now May 1, 1896, I hereby certify that I am disqualified from hearing the above case, and direct that Hon. S. H. Miller, of the 35th district, being the nearest president judge, hear the same, and fix Monday, May 25, 1896, at 1:30 p. m., as the time for hearing the said case."

On May 25, 1896, the defendants presented to the court (WALLACE, P. J., presiding) a petition setting forth " that this action is for the recovery of damages by the said plaintiff from the said defendant for an alleged libel published in The New Castle News : And your petitioners further show that the said plaintiff, William D. Wallace, is at present the president judge of the fifty-third judicial district of the state of Pennsylvania, composed of the county of Lawrence, and the only law judge of said district, and who is by law required to try and hear the above cause, and that he is personally interested in the event

of the same, and in the question to be determined thereby, he being the plaintiff and the only plaintiff in this cause.

"Wherefore your petitioners pray for a change of venue and your petitioners will ever pray, etc."

The court made this order:

"May 25, 1896, the within petition presented to me in open court, and the same directed to be presented before Hon. S. H. Miller, president judge of 35th district, to whom this case was certified for trial." [1]

Subsequently MILLER, P. J., overruled the motion. [2]

On May 25, 1896, the defendants filed the following plea, with the proper affidavit:

(1.) Defendants have petitioned court for a change of venue, which under the constitution and laws of this commonwealth the court is bound to allow, and being so bound the court has no right to proceed to trial of the cause.     (2.) Defendants having moved for a change of venue the court, as constituted, with Hon. S. H. Miller as president judge of the 35th judicial district on the bench, is not constituted so as to legally try this cause. (3.) Hon. S. H. Miller is disqualified to try this case for the reason that he is not an impartial, unprejudiced and indifferent judge with respect to the matters in issue in this suit.     That he has written a letter to one of the defendants in which he has expressed an opinion on three questions of law and fact that will be and are in issue, and in one question of law and fact in issue has stated in said letter that he knows the conclusion of the issue, and his opinion and knowledge so expressed are against defendants' interests, and that the questions of law and fact and on which he has so expressed himself, are material in this case.

Evidence in support of the plea was the following letter by S. H. Miller, the judge, to one of defendants:

"NEW CASTLE, Pa., May 4th, 1895.

"MR. DAVID JAMESON:

"DEAR SIR: As the friend of your father, Mr. Frank Allen, I desire to call your attention to the character of the articles indulged in by *your* paper — The News — toward me.   I am informed by citizens of New Castle, who are in position to know, that you can, and at times do absolutely control the columns of The News, and direct what shall and shall not appear in its

columns.   I am quite sure you read what appeared in The News last March relative to my judicial action in the Richardson case, and I presume you indorsed the style, language, words and substance used by the person who wrote the several articles.

" I have had but little acquaintance with you, and none whatever with the person who writes the articles, but I had supposed that you would not permit your columns to be used to vilify me because you disliked someone else.

" I wish you to know that I believe you could put a stop to this if you wished to.

" I enclose clipping from editorial of May 2.   Also, call your attention to clipping in May 3, and ask you to re-read the several articles which appeared in March.

" Very truly,<br>
" S. H. MILLER."

The court overruled the plea and granted an exception for defendants. [3]

The defendants then filed a motion in challenge to the array of jurors; which motion, evidence and ruling thereon are as follows:

And now, May 25, 1896, the defendants in the above cause challenge the array of jurors in said court, and in support of said challenge assign the following reasons:

That the jury wheel in and for said county, from which the panel of traverse jurors was drawn in pursuance of the venire issued from said court, commanding the sheriff and the jury commissioners of said county to impanel a jury of forty-two jurors for the trial of issues at May term, 1896, being the present session of said court, was filled in January, 1896, with the names of persons selected alternately by the jury commissioners of said county and the president judge of said county, the said William D. Wallace, plaintiff in this case ; which said case was then at issue, pending and undetermined in said county, as jurors in and for the several courts of said county, for the year 1896.   Wherefore the said traverse jurors in the panel for the trial of the causes now upon the list for trial at this term, including the above entitled cause, being so selected by the said jury commissioners and the president judge of the said court,

he, the said William D. Wallace, being the plaintiff in this cause, the said jurors are, therefore, not proper, competent and qualified jurors under the law for the trial of said cause.

Also, for the reason that the list containing the names, occupation and residence of every person placed in said jury wheel for said year of 1896, filed of record in the office of the prothonotary of the court of common pleas of said county was not certified by the said president judge.

All of which matters and facts appear by the records of said court, and the defendants therefore pray that this their challenge may be sustained.

Order of court for filling jury wheel for the year 1896, was as follows :

" LAWRENCE COUNTY, SS :

" Now, December    , 1895, it is ordered by the court of common pleas of said county, that the jury commissioners and president judge of said county, or a majority of them, shall meet on January 6, 1896, being the first Monday of said last named month, to select, and shall select 500 names including also the names now in the jury wheel, if the persons named be living and resident in said county and proper persons for jury service ; sober, intelligent and judicious persons, in the manner required by law from the whole qualified electors in said county at large to serve as jurors in the several courts of said county for the ensuing year, beginning on January 1, A. D. 1896, and in the mode and manner now directed by law, prepare and place the names of the persons so selected in the proper jury wheel, to the end that the persons so selected may be duly drawn therefrom, and summoned to serve as jurors in the several courts of said county."

The certificate of jury commissioners was as follows :

" LAWRENCE COUNTY, SS :

" In pursuance of the order of the court of common pleas of this county, designating the number of jurors to serve for the year 1896, according to law, we, Samuel Brandon and David R. Hill, jury commissioners, and William D. Wallace, president judge, after having first been duly sworn according to law, did

meet in the court house in the city of New Castle, Pa., on Monday, January 6, A. D., 1896, at 9 o'clock, and did proceed to select, as required by law, from the number of qualified voters of said county, five hundred sober, intelligent and judicious persons to serve as jurors in the several courts during the year, A. D., 1896, whose names, occupations and places of abode were written on slips of paper, and the same duly proven and placed in the county jury wheel, and said wheel locked and sealed according to law, and the key thereof placed in the possession of William Becker, Esq., high sheriff of said county, the wheel itself remaining in the possession of the jury commissioners, and being put for safe keeping in the vault of the office of the commissioners. A list of the names of persons so chosen as jurors, with the occupation and residences, also each one numbered to correspond with the number on the side slips as within in this book on the pages immediately preceding this return, Judge William D. Wallace being present a part of the time occupied with said work.

" In witness whereof we have hereunto subscribed our names and affixed our seals this 28th day of January, 1896.          :

"S. BRANDON, Jury Commissioner. [SEAL.]

"D. R. HILL, Jury Commissioner." [SEAL.]

" Attest:

" WICK W. WOODS, Clerk.

Ruling of Court: The motion, therefore, to challenge the array of jurors is overruled and an exception sealed for the defendants. [4]

On May 26, 1896, the defendants filed the following special plea:

Now, May 26, 1896, before jury is sworn, defendants, by their attorneys, plead specially to the jurisdiction of this court to proceed in the trial of this cause, and in support thereof show that a writ of certiorari has been issued by the Supreme Court and filed in this case removing the record in this case out of this court to the Supreme Court.

Ruling: The plea is refused and an exception sealed for defendants. [5]

At the trial it appeared that the alleged libelous publication was as follows:

## " WHO GOT THE $50 ?

. " Sensational evidence admitted in the famous suit against
the mayor.

### " W. D. WALLACE'S OFFICE !

" District Attorney Emery and Detective Marshall say they
were approached with offers to divide the $150.

### " THE ITALIAN SPOLIATION.

" No more sensational case has ever been tried in New Castle
than that heard to-day before Alderman Bowman in the suit of
Lewis Tardelli against Mayor Alexander Richardson, to recover
$150 alleged to be an amount paid Richardson for the settlement
of a criminal proceeding against Antonio Valencia.

" The most astonishing part of the evidence admitted was
brought out in Tardelli's statement that he had negotiated this
alleged settlement in the office of W. D. Wallace, the regular
Republican candidate for president judge of Lawrence county,
and that his receipt from F. L. Genkinger, the alleged 'go-
between,' was written in the back room of this attorney's office
on letter paper belonging to Mr. Wallace, and that there were
men in that back room whose identity was carefully concealed
from him.

" Still more remarkable is the statement made by Antonia
Valencia that there were only $100 brought to Youngstown by
Genkinger, nothing having been brought out to show where
went the $50, the difference between this amount and the amount
which Tardelli says he paid 'Fritz' in the office of W. D. Wal-
lace."

When David Jameson was on the stand he was asked this
question: Q. Now in the New Castle News of date Thursday,
October 25, 1894, (the article of exhibit " G " shown the witness)
state whether you wrote or caused that article to be written,
whether you dictated it or caused it to be published, or sug-
gested its publication ?

Defendants' counsel objected to this inquiry as irrelevant and
immaterial for any purpose in this case.

By the Court: The court can not tell whether this article is
irrelevant or not. The court does not know what the article
is. We think the question is proper. The objection is over-
ruled and an objection sealed for the defendants.

Defendants' counsel further object to the inquiry that this paper was published on the 25th day of October, 1894, and subsequent to the bringing of the suit, and therefore the inquiry is irrelevant and immaterial.

By the Court: The objection is overruled for the same reason given in the last ruling, and an exception sealed for the defense. The witness: I have no recollection of having done so and I do not think I ever did. [6]

When the plaintiff was on the stand the following offer was made:

Plaintiff's counsel offer to show by this witness that immediately upon the fact of the publication of the libel being brought to his notice, he obtained the affidavit of all the parties alleged to have been interested, and with these affidavits and his own statement, showing that he had no connection with the case, and that the whole article was false as far as it applied to him, that he took those affidavits with the statement to the manager of the paper, with the request that they publish those affidavits and his statement; that he left them there with the editor and manager of The News, Mr. Robert M. Winter, and that they refused to publish the same, after having invited the plaintiff, by their articles, to vindicate himself. This for the purpose of showing malice.

Objected to by defendants' counsel that Mr. Winter is not a party to this suit, and there is no evidence shown that Mr. Winter communicated with anyone connected with the ownership of this paper, and it has not been shown that Mr. Jameson had any connection whatever with the publication of the paper.

The Court: Mr. Jameson has testified and has shown what connection he had with this very matter.

Objected to further by defendants' counsel, there being no evidence showing that Mr. Jameson had any connection with the publication of the paper, or of the article alleged to be libelous, the evidence of conversation between the plaintiff and Robert M. Winter is not admissible for any purpose as far as Mr. Jameson is concerned. The same objection is made as to the competency of this evidence to affect Alliene W. Treadwell. Also, same objection is made as to Mrs. Treadwell, so far as actual malice is concerned.

By the Court: It being in evidence in this case that Mr. Win-

ter is the manager and publisher of this paper, the evidence for the purpose offered is admitted. The objection is overruled and an exception sealed for the defendants. [16]

Defendants' points and answers thereto among others were as follows :

2. The publication complained of is not libelous per se. *Answer :* The publication complained of is not libelous per se, unless it charges an indictable offense. It is alleged by plaintiff that the article complained of charges him with bribery. If you should find from all the evidence that the article does charge the plaintiff with bribery, then we say to you it is libelous per se. If you should find from all the evidence that the article does not charge the plaintiff with bribery, it is not libelous per se. Thus explained, this point is affirmed. [9]

3. There is no allegation of special damage to the plaintiff, and your verdict should be for defendants. *Answer :* Refused. [10]

4. There is no proof of special damage to the plaintiff, and your verdict should be for the defendants. *Answer :* Refused. [11]

10. The plaintiff claims that the publication complained of means that the plaintiff received $50.00 from F. L. Genkinger, or some other person, for the purpose of unlawfully settling a criminal prosecution against Antonio Valencia ; and also means thereby that the plaintiff was a party to the negotiating of said alleged unlawful settlement of a criminal prosecution against Antonio Valencia, and being a party to the bribery of Alexander Richardson, mayor of the city of New Castle, for the purpose of having said criminal prosecution settled. The publication complained of is not capable of the meaning ascribed to it by the plaintiff, and your verdict should be for the defendants. *Answer :* Refused. The court cannot say, as a matter of law, that this is true. [12]

11. The evidence shows the defendants had reasonable and probable cause to believe true all of the published statements complained of, and your verdict should be for defendants. *Answer :* Refused. [13]

The court charged in part as follows :
[Under this agreement, and after its date, did Jameson have

the right to exercise any management or control over the articles that appeared in the columns of The News relative to the candidacy of W. D. Wallace, and did he exercise such management and control?   Did he know before the article complained of was published that it was to be published, and did he directly or indirectly and knowingly cause or procure it to be written or published?] [14]

[The action is brought by the plaintiff in his business capacity.   If his business reputation has been injured by the publication of this article, and if, under the principles which we have explained to you, you believe he is entitled to a verdict, you should give him such a verdict as will be a substantial vindication.] [15]

Verdict and judgment for plaintiff for $2,500.   Defendants appealed.

*Errors assigned* were (1, 2, 3, 4, 5) various interlocutory orders as above; (6, 16) rulings on evidence, quoting the bill of exceptions; (7, 8,) refusal to enter nonsuit; (9–15) above instructions, quoting them.

*J. Norman Martin*, with him *D. B. & L. T. Kurtz*, for appellants.—A change of venue should have been granted: Voris v. Smith, 13 S. & R. 334; Pa. Canal Co. v. Phila. & Read. R. R., 2 Pearson, 298; Act of March 18, 1875, P. L. 30; Williamsport v. Com., 90 Pa. 498; Felts v. Del., Lack. & West. R. R., 160 Pa. 503; Prospect Brewing Co's Petition, 127 Pa. 523; Knarr's Petition, 127 Pa. 554; Com. v. White, 161 Pa. 576; Barnes v. Com., 11 W. N. C. 375.

The Supreme Court possesses an inherent power to revise the proceedings of all inferior jurisdictions, in order to correct errors on their face, but not to rejudge their judgments on the merits, by certiorari: Carpenter's Case, 14 Pa. 486; Kimber v. Schuylkill Co., 20 Pa. 366; Bauer v. Angeny, 100 Pa. 429; Pa. R. R. v. Lutheran Congregation, 53 Pa. 445; In re Grand Lodge, 110 Pa. 613; Northampton Co.'s App., 57 Pa. 452; Parks v. Watts, 112 Pa. 4.

Impartiality is said to be the first duty of a judge, and we assume that it will not be controverted that in law a party is entitled to a trial before an impartial and unprejudiced judge: Com. v. Balph, 111 Pa. 365.

If a legal exception can be established against the whole panel or any individual juror, it will be allowed at the proper time : Hartshorne's Lessee v. Patton, 2 Dallas, 252 ; Kittanning Ins. Co. v. Adams, 110 Pa. 553 ; Brown v. Com., 73 Pa. 321 ; Com. v. Spring, 5 Clark, 238 ; Dyott v. Com., 5 Wharton, 67.

The special plea filed after certiorari issued should have been sustained : Miles v. O'Hara, 1 S. & R. 32 ; Grubb v. Fox, 6 Binney, 460 ; DeCoursey v. Guar. & Trust Co., 81 Pa. 217 ; Graver v. Fehr, 89 Pa. 460 ; Taylor v. Briesch, 20 W. N. C. 343.

It was the duty of the court to know whether the article was irrelevant or not.   How could the trial judge "think the question proper" when he did "not know what the article" was ? The article Ex " G " was shown the witness, and before ruling on the objection, the court should have been informed, and not have *thought* without first having obtained such information as would support an opinion.

The court should have entered a compulsory nonsuit.

Every word in the head lines and every line in the article is warranted by the published testimony.

An innuendo cannot enlarge or extend the sense of expressions beyond their usual, natural import, unless something is put upon the record by way of introductory matter with which they can be connected : Pollard v. Lyon, 91 U. S. 233 ; Gosling v. Morgan, 32 Pa. 275 ; McClurg v. Ross, 5 Binn. 218 ; Stitzell v. Reynolds, 59 Pa. 488 ; P. A. & M. Mass. Ry. v. McCurdy, 114 Pa. 554 ; Starkie on Slander and Libel, 383 ; Lukehart v. Byerly, 53 Pa. 418 ; Shaffer v. Kintzer, 1 Binn. 537 ; McClurg v. Ross, 5 Binn. 218 ; Thompson v. Lusk, 2 Watts, 17 ; Tipton v. Kahle, 3 Watts, 90.

The publication was privileged : Neeb v. Hope, 111 Pa. 145 ; Briggs v. Garrett, 111 Pa. 404 ; 13 Am. & Eng. Ency. of Law, 319, 467 ; Press Co. v. Stewart, 119 Pa. 584 ; Odgers on L. and S., pp. 20, 75, 83 ; 2 Greenleaf, sec. 420 ; Pittock v. O'Neill, 63 Pa. 253 ; Greenleaf on Evidence, 417.

There is no allegation or proof of special damage, and the words not being actionable per se, nonsuit should have been entered : 13 Am. & Eng. Ency. of Law, 435, 436 ; Hurshfield v. Ft. Worth Nat. Bank, 29 Am. St. Rep. 660 ; Odgers on L. & S. 226, 310 ; Cooley on Torts, sec. 204, note 3 : Chapman v.

Calder, 14 Pa. 368; Winebiddle v. Porterfield, 9 Pa. 137; Travis v. Smith, 1 Pa. 234; Klinck v. Colby, 46 N. Y. 427; Bradley v. Heath, 12 Pick. 163.

If the plaintiff's business reputation was injured the jury could so find from the evidence only, as said supra, plaintiff neither alleged nor found any special damage: Wood's Mayne on Damages, p. 633; 13 Am. & Eng. Ency. of Law, 434.

Clearly, the admission of the evidence of a conversation between plaintiff and Mr. Winter was error. So far as the alleged libel is concerned Jameson and Winter were strangers to each other. Nothing that Winter could say, do, or refuse to do could bind Winter. Further, the offer did not propose to show that Mr. Winter conveyed to Mr. Jameson the substance of the talk with plaintiff, or that he consulted Jameson with reference to the affidavits and statements.

*B. A. Winternitz,* with him *Jno. G. McConahy, W. H. Falls* and *E. M. Underwood,* for appellee.—Change of venue was properly refused.

The letter of Judge MILLER offered in support of the plea to the jurisdiction in no way refers to this case; no question of law or fact involved in this case is therein mentioned, and it could in no way, if true, affect the jurisdiction of the court. The jurisdiction being the power of the court to hear and determine the cause, the matter of partiality or prejudice raises no question of jurisdiction.

It is apparent that Judge WALLACE could not certify to the list, not being present all the time; and the only persons who could legally certify to the list were those who were present all the time; and they did. That is all the law requires: Munshower v. Patton, 10 S. & R. 334; Act of April 10, 1867, P. L. 62.

The appellants do not deny that they submitted themselves to the jurisdiction of the court after they had sued out the writ, but claim that the writ became a supersedeas when filed in court. If this position were tenable it would be a novelty in the administration of justice.

Any malicious publication written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred or degradation of character, is a libel and the per-

son libeled may recover damages unless it be shown that the publication was true, or that it was justifiably made: Neeb v. Hope, 111 Pa. 145; Ogden on L. & S., 25, 76.

What was the purpose and object in giving so much prominence to Wallace's name in connection with the case, if not to convey the idea and impression that he was a party to and implicated in it: Com. v. Keenan, 67 Pa. 203; Collins v. Dispatch Pub. Co., 152 Pa. 187.

If the judge considers the words are reasonably susceptible of a defamatory meaning as well as an innocent one, it will be a question for the jury which meaning the words would convey to ordinary Englishmen who heard or read them, without any previous knowledge of the circumstances to which they relate: Ogden on L. & S., 93; 2 Starkie on Slander, 51.

A newspaper article containing matter otherwise proper for publication loses its privilege if it accompanies its statement with sensational embellishments: Com. v. Murphy, 8 Pa. C. C. 399.

It has been held to be libelous to publish a highly colored account of judicial proceedings mixed with the party's own observations and conclusions, the court saying that the comments which accompanied it deprived the publication of its privilege: Pittock v. O'Neill, 63 Pa. 353; Barr v. Moore, 87 Pa. 385.

When the defendant publishes words to injure the plaintiff's reputation, he must be taken to have intended the consequences naturally resulting therefrom, and the question whether the defendant acted maliciously or not should not be left to the jury unless the occasion be privileged: Neeb v. Hope, 111 Pa. 145: Conroy v. Pittsburg Times, 139 Pa. 334.

If Jameson and Mrs. Treadwell gave to Winter charge and control of the paper, reserving no supervision, he was practically authorized by them to write and publish therein any articles he thought proper, and they are responsible for his acts: Bruce v. Reed, 104 Pa. 408.

Any words which impute a crime to the plaintiff, or that he has been guilty of professional misconduct, or which have a tendency to injure him in his office or profession, are actionable per se without proof of special damage.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

The first three assignments of error relate to the application for change of venue. At the time this suit was brought the Hon. A. L. HAZEN was president judge of the district and there was nothing peculiar in the case in respect to the time or place of trial, or the judge to try it. But after suit brought the plaintiff was elected president judge, and of course was ineligible to try the case. In such a situation the statutes point out two remedies. Under the act of April 22, 1856, P. L. 500, the president judge may certify his disability and then must order the case to be heard before "the president judge residing nearest the place of such trial, who shall be disinterested:" Com. ex rel v. White, 161 Pa. 576. Or by the act of March 30, 1875, P. L. 35, either party may by petition apply for a change of venue. Each of these acts is effective for the purpose of securing an impartial trial. The intent is the same in both, and there is no repugnancy in the two remedies, to prevent their concurrent existence. But the one which is first applied, must thereafter necessarily be exclusive in the particular case. The act of 1875 is cumulative, and was not intended to repeal or supersede the act of 1856. When therefore the present case was properly certified to the nearest judge, under the act of 1856, there was no longer any room for the intervention of the act of 1875, on the ground of the interest of the judge as the common intent of both acts had been secured.

The application for change of venue was tardily made on the day set for trial. The act of 1875 does not fix any time for filing the petition, but directs that it may be presented "to the court in term time, or to any law judge thereof in vacation," and must be accompanied with an affidavit that it is not intended for delay, thus manifestly indicating that it should be promptly done, and not deferred till the trial is actually called with a jury at hand. In the present case the motion was first made before Judge WALLACE, who properly referred it to the judge to whom the case had been already certified, and the latter refused it on the ground that the case was already before a judge appointed by law, under the act of 1856, to try it, and who was disinterested. In this there was no error.

Before the jury was sworn the defendants filed a special plea to the jurisdiction of the court as constituted. Part of the

grounds, relating to the change of venue have been already disposed of, but the plea asserted the disqualification of Hon. S. H. MILLER to try the case, as he was "not an impartial, unprejudiced and indifferent judge with respect to the matters in issue." The only evidence produced in support of the plea was a letter from Judge MILLER to one of the defendants calling his attention to some articles in the newspaper, and expressing the opinion that he could and did sometimes control the columns of The News, and "could put a stop to this if you (he) wished to." Neither the letter nor the matters referred to in it had any connection with the present suit, nor did they in anyway show any interest which disqualified the judge. Objections which merely relate to the judge's personal opinions or feelings, and not to his legal interest in the case or the question, are not within the statute, and must be addressed to his discretion: Ellmaker v. Buckley, 16 S. & R. 72; Library Co. v. Ingham, 1 Whart. 72; Phila. v. Fox, 64 Pa. 185.

The fourth assignment is to overruling the challenge to the array of jurors, because the plaintiff in the suit, Judge WALLACE, had participated in the selection of the names and putting them in the wheel from which juries were to be drawn during the year. This objection was made too late. The names were selected and put in the wheel for the year 1896 on January 6, in pursuance of an order made in the previous month. The case had then been at issue for more than a year (plea filed in December, 1894), and defendants must have known that it was likely to be upon the trial list at any session of the court in 1896, yet they did not make this motion until May 26, after the overruling of the motion to change the venue and the plea to the jurisdiction, and when the jury was about to be called for the trial. It was too plainly meant for delay to be treated with favor. As said by our Brother DEAN in Klemmer v. Railroad Co., 163 Pa. 521, 533, "all text writers on practice say that a motion to quash the array should be made as soon as the facts which warrant it are known."

But even if made promptly and overruled the objection would not warrant a reversal of the judgment. Five hundred names were put in the wheel, and the selection of them was the work of the president judge and the commissioners jointly, the main burden being borne by the commissioners as is evident from

their certificate that the judge was present only a portion of the time.   With the drawing from this five hundred of the particular panel for the May session of the court, the judge had nothing to do.   In Munshower v. Patton, 10 S. & R. 334, it was held that the sheriff who returned the jury being a brother of a party, was a good cause of challenge to the array, but it was also said that " it would be no cause of challenge that the sheriff was related to one of the parties, so far as respected his uniting with the commissioners in making out the list, and the other measures preparatory to their summons."   The mere co-operation of the interested officer in the selection of names to be put in the wheel for the entire year, was held too remote to sustain a challenge.   The same reason applies with even greater force to the present case.   The cause was at issue before the jurors were named for 1895.   Was the judge to refrain from the performance of part of his official duty merely upon the chance that his own case might come up for trial during that year?   It did not come up.   Was he then to refrain for another year?   Such a construction would be unreasonable.   If the defendants thought themselves in any danger from a jury of the county drawn out of the five hundred so selected, there was ample remedy in a timely application for a change of the venue, to an indifferent county.

The sixth assignment is to the admission of a question put to Jameson, one of the defendants, whether he wrote or caused the publication of an editorial in the newspaper subsequent to the alleged libel.   He answered that he had not, and the article was not offered in evidence.   Whether this editorial was competent evidence or not depends on matters which do not appear, and nothing is shown in the exception by which appellants could have been injured.

The next two assignments are to the refusal of a nonsuit, which is not the subject of review.

The defendants presented requests for charge that the publication complained of was not libelous per se, that there being no allegation, and no proof of special damage the verdict must be for defendants, and that the publication was not capable of the meaning ascribed to it by the plaintiff that he had been party to the unlawful settling of a criminal prosecution by the bribery of the mayor.   All these requests were properly refused.

The judge instructed the jury that the publication was not libelous per se unless it charged bribery, which was much more favorable to defendants than they were entitled to, since to impute corrupt or dishonorable action to an attorney in his professional conduct is actionable per se though it fall short of bribery: Barr v. Moore, 87 Pa. 385; Townshend on Slander and Libel, ed. 1890, pp. 248, 357; Newell on Libel, etc., ed. 1890, p. 184 and cases cited. Whether the publication conveyed the meaning charged was for the jury. It was clearly susceptible of it without innuendo or colloquium, if indeed it really admitted of any other.

Appellants further claimed that the publication was privileged, and that there was probable cause to believe the statements true. Even if this were fully conceded it would not help the appellants' case. As plaintiff was a candidate for public office, his character and conduct were proper subjects of public discussion, and the publication of any facts throwing light on his qualifications or disqualifications would be privileged. But the publication complained of was more than a narration of even alleged facts. It was a highly sensational and damaging account of an alleged illegal transaction, with mention and reference to the plaintiff as being connected with and party thereto. It brought the' case directly within the rulings in regard to the style of the publication. Thus in Pittock v. O'Neill, 63 Pa. 253, it was said, " had the publication been confined to the petition filed in the court of common pleas, it might have been considered as privileged, and the plaintiff held bound to prove express malice. But the comments which accompanied it deprived it of its privilege. It has been held to be libelous to publish a highly colored account of judicial proceedings mixed with the party's own observations and conclusions." In Neeb v. Hope, 111 Pa. 145, it was said, " The defendants contend that if the publication was made in good faith and without malice they are not liable. This would be so had the article kept within proper limits." And in Conroy v. Pittsburg Times, 139 Pa. 334, it was held that a privileged communication is one made upon a proper occasion, from a proper motive, based upon reasonable or probable cause, and in a proper manner. " If the manner be improper the privilege is lost." While a fair account of the transaction which was the basis of the publication would have

been privileged, the manner and style of this account and comment were for the consideration of the jury to determine if the privilege had been exceeded, and were properly submitted to them for that purpose.

The remaining assignments are to the submission of the case to the jury without sufficient evidence, especially against the defendant Jameson. It is enough to say that there was evidence that there was an agreement between the manager of the newspaper and Jameson, who was one of the executors of the former owner, that Jameson was to have control of the political columns of The News in that campaign, so far at least as related to the candidacy of the plaintiff for the judgeship. Whether he exercised this control in such manner as to make him jointly liable for the publication here complained of was a fact in the case which was fairly submitted to the jury.

In regard to the evidence of express malice, as bearing on the question of damages, it was entirely competent for plaintiff to show that the newspaper had challenged him to explain his connection with the alleged bribery, and when he offered the explanation fortified by affidavits, the paper refused to publish it, even as a paid advertisement. Jameson's liability in this as in other respects was as already said, a matter for the jury.

Judgment affirmed.