## Stella Moore *v.* The Leader Publishing Company, Appellant.

*Libel—Privileged communication—Reasonable or probable cause.*

A communication to be privileged must be made upon a proper occasion, from a proper motive, in a proper manner and be based upon reasonable or probable cause.

An article was published as written by a reporter and furnished by a news agency which employed him, to which headlines were added in the office of defendant newspaper, as follows : " Who is Mrs. Moore ? She assaulted a fruit man who called to collect a bill and now, when a warrant is out for her, has changed her personality. Isadore Bowers had tough luck, for he not only lost his fruit but got a poker thrashing for trying to collect the cash." *Held*, that the proper basis for the publication is lacking, inasmuch as the plaintiff occupied no relation to the public which made it proper to publish the details of her private affairs, nor were there any other facts in the case which brought it within the rule of being made upon a proper occasion. The publication was libelous per se, and it was the duty of the court so to instruct the jury.

Even if the reporter had been the agent of defendant, the information on which he prepared the article, coupled with the fact that he had been informed that no one bearing the name of the plaintiff lived at the place where the aggravated assault and battery took place, was clearly insufficient to constitute reasonable or probable cause.

*Evidence—Libel—Probable cause.*

The issue being probable cause warranting publication of a newspaper article alleged to be libelous and the reporter who furnished the " item " being on the stand, the court properly excluded the question, " Whether or not the information that you received from those parties tended to convince your mind of the probability of the story told you by Mr. B. ? " The subject of inquiry is, not the mental process of the witness but the facts upon which probable cause was to be based.

*Charge of court—Measure of damages—Specific instructions must be asked for.*

Although the instructions of the trial judge on the question of measure of damages were neither very full nor very explicit, but correct, the ap-

pellate court will not reverse. If the defendant required more specific instructions he should have asked for them.

*Libel—Malice presumed—Damages.*

A publication being libelous per se, malice is to be inferred, and it is not necessary to prove express malice nor special pecuniary damages to entitle plaintiff to recover " a fair compensation for injury resulting from the publication of the article."

Argued April 27, 1898. Appeal, No. 24, April T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1895, No. 434, on verdict for plaintiff. Before WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass for libel. Before KENNEDY, P. J.

It appears from the record that the libel complained of was as follows:

" Who is Mrs. Moore? She assaulted a fruit man, who called to collect a bill. And now, when a warrant is out for her, has changed her personality. Isadore Bowers had tough luck, for he not only lost his fruit but got a poker thrashing for trying to collect the cash.

" Isadore Bowers, who keeps a fruit stand at .Federal and Robinson streets, Allegheny, went before Police Magistrate McKelvey yesterday afternoon and made information against Mrs. Moore, of 172 Robinson street, charging her with aggravated assault and battery. A warrant was issued for the woman's arrest and given to Lieutenant of Police McIntyre. The officer called at the address given, but found that no woman answering to the name of Mrs. Moore lived there.

" Mr. Bowers was seen last night, and in speaking of the case, said:

"' A woman who claimed her name is Mrs. Moore has for some time past been buying at my stand. Several days ago she sent a note to me by a little girl, asking that I send her a dozen oranges, some bananas and some other fruit. I sent the order and in a few days she came down and paid me. She then sent other persons for fruit and confectionery, and I filled the orders, but when I sent a collector to her place, 172 Robinson street, he was told no woman named Mrs. Moore lived there. Yesterday I sent my brother up to collect the bill, and

154      MOORE v. PUBLISHING CO.

Statement of Facts—Assignment of Errors.    [8 Pa. Superior Ct.

the door was slammed in his face and some one inside the house began screaming for the police. Scared half out of his wits my brother came back and told me what had occurred. Taking him with me, I went to the house and the little girl who had got the goods came to the door. "Here's the fruit man," she called out, and the woman whom I took for Mrs. Moore said to bring me in.

"'Telling my brother to follow me, I went into the house. We were taken into a back room, where Mrs. Moore and another woman were. Mrs. Moore closed the door and said "Now call the police." I recognized the other woman as the one I had seen at Alderman Braun's office and concluded we had best get out of there. We started for the door, when Mrs. Moore picked up the poker and began beating me over the head and arms. We got out of there and this morning I brought the suit.

"'I think the women are named Bartlett, and as soon as I can learn their names for certain I will enter suit against both of them.'

"The warrant for Mrs. Moore's arrest has not yet been served and no arrests have been made."

Plaintiff submitted no testimony on the subject of injury but rested on the publication.

Verdict for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1) in sustaining the plaintiff's objection to the defendant's offer of evidence, which offer was as follows, H. B. Scott, the reporter, being on the stand : " Q. Mr. Scott, on examination there was brought out the fact that after you had seen Bowers that night you saw some other parties and made some inquiries in relation to matters connected with Mrs. Moore. I want to ask you this question : Whether or not the information that you received from those parties tended to convince your mind as to the probability of the story told you by Mr. Bowers ? " (2) In sustaining plaintiff's objection to defendant's offer of evidence, which offer and objection thereto were as follows, Isadore Bowers being on the stand : " Q. Well, was either of those women that were in the back room or kitchen, a woman that you took for Mrs. Moore ? A. Yes, sir. Q. Well, then, what took place ? Objected to

unless they show that the plaintiff was there at the time. The rest of the article refers to the plaintiff, Mrs. Moore. Objection sustained. By Mr. Rodgers: The witness having testified that he was invited in by a woman whom he took for Mrs. Moore, and a woman as to whose identity he was not perhaps clearly informed, I now propose to show what took place in the room, that being in substantial accord with the statements contained in the article. Objected to, as the plaintiff is present in open court, and that the testimony in the case shows she was the only Mrs. Moore living in that house, and now in order to make this testimony competent, it would be better to show that Mrs. Moore was present. By Mr. Rodgers: I offer to prove the facts as stated in the remainder of this interview, so far as it relates to what took place in the back room, for the purpose of proving the truth of the statement and showing probable cause. Objection sustained. Exception allowed and bill sealed." (3) In the following part of its charge: "The information, as such, made by Mr. Bowers, is not published in this article, and hence it is not allowable to publish in that way by a newspaper. In other words, it is not what is called a privileged publication. If the information, as such, has been published, and the proceedings, as the judicial proceedings, had been published it would have been privileged, and that would have been a complete defense to this action. But inasmuch as it was not so published, I cannot say to you that it is a privileged publication." (4) In the following part of its charge: "If the publication was made as a judicial proceeding it would be privileged, but made otherwise it is not privileged." (5) In the following part of its charge: "Those are the two questions for your determination: first, is the article libelous under the definition which I have given you? And if it is, then are the statements contained in the article true?" (6) In the following part of its charge: "As to the amount of such damages you are the sole judges, whatever in your judgment would be a fair compensation for injury resulting to her from the publication of the article." (7) The charge as a whole was an inadequate presentation of the case to the jury. (8) In refusing binding instructions for defendant. (9) In refusing defendant's second point, which point is as follows: "2. The publication in question was quasi privileged." (10) In its answer

to defendant's third point, which point and answer thereto are as follows : " 3. Newspapers have a right to publish judicial proceedings, including the contents of informations made before magistrates. In so far as this article states that an assault and battery was committed, it is merely a statement of what was in the information. *Answer :* This is a correct statement of a principle of law, and as such is affirmed. But in this case, as I have already told you, the publication was not made as that of a judicial proceeding. It did not publish the information made before the alderman as such; if it had done so, this would have been a complete defense to the action ; the publication would then have been privileged. But not having done so, the publication was not privileged."

*W. B. Rodgers*, for appellant.—In Conroy v. The Times, 139 Pa. 334, it was held that a privileged communication is one made upon a proper occasion from a proper motive based upon reasonable or probable cause and in a proper manner.

A breach of the peace had been committed, an information had been made against the plaintiff here, and a warrant issued for her arrest. The motive in the publication was proper because above facts were proper for public information. There was reasonable cause. It is difficult to conceive of a case in which probable cause would be clearer.

Having thus denied to the defendant any privilege at all, and probable cause as well, the court then told the jury that if the article was libelous the plaintiff was entitled to such damages as may have accrued to her by reason of the publication of the article, and that was for their judgment and determination as to amount.

*Rody P. Marshall*, with him *Thos. M. Marshall*, for appellee. —The first assignment does not fall within the exceptions to the admission of hearsay: Morey v. Morning Journal Assn., 123 N. Y. 207.

The second assignment was held clearly inadequate as a defense in many cases, and by this court in Oles v. Times, 2 Pa. Superior Ct. 130.

The third, fourth, fifth and sixth exceptions are to portions of the judge's charge without giving the connection in which

they were delivered.   We think they are the proper statements of the law when taken in connection with what precedes and follows each excerpt.

Further, it has been held that, " A newspaper has no right to publish the contents of an ex parte affidavit made to obtain the plaintiff's arrest on a criminal process, unless the charge made by the affidavit is true: " 7 Wait's Actions and Defenses, 439 ; Rex v. Fisher, 2 Campbell, 563 ; Holt's Law of Libel, 172 ; Matthews v. Beach, 5 Sandford's R. 256.

The publication of these preliminary examinations has a tendency to pervert the public mind, and to disturb the course of justice, and it is therefore illegal.

In Delegal v. Highley (1837), 32 Eng. Com. Law, 398, the only justifications which the law admits to the publication of an accusation of this nature are two, (1) that the accusation against the plaintiff was founded on facts which make the charge itself a true charge, and (2) that the publication was justified by the occasion, viz: that is, a true, full and faithful account of proceedings in a court of justice, citing De Crespigny v. Wellesley, 5 Bing. 405.

OPINION BY BEAVER, J., July 29, 1898 :

A communication to be privileged must be made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable or probable cause: Briggs v. Garrett, 111 Pa. 404, 414 ; Conroy v. Times, 139 Pa. 334.

The plaintiff complained of an article published by the defendant, in which she was charged with aggravated assault and battery upon one Bowers.   The facts contained in the publication were furnished by a news agency which employed the reporter who wrote the item based upon information which he had obtained from different persons including the superintendent of the bureau of police and Bowers, the person who had been assaulted.   He had also been informed, before the article was written, by the police officer to whom the warrant had been given to be executed, that no person bearing the name mentioned in the warrant lived at the place alleged in the information to be her residence.   The article was published as written by Scott, the reporter, and furnished by the news agency which employed him, to which the headlines

were added in the office of the defendant as follows: "Who is Mrs. Moore? She assaulted a fruit man who called to collect a bill and now, when a warrant is out for her, has changed her personality. Isadore Bowers had tough luck, for he not only lost his fruit but got a poker thrashing for trying to collect the cash."

The third, fourth, ninth and tenth assignments of error relate to the general instructions given by the court and the answers to the defendant's points regarding the character of the publication. The court held, as a matter of law, that the publication was in no sense privileged or quasi privileged and in this there was no error. The publication lacks every element of a privileged communication. The manner of its publication, as shown by the headlines, was sensational. The motive, therefore, evidently was to attract attention rather than to give information. "If the manner be improper, the privilege is lost:" Wallace v. Jameson, 179 Pa. 98. It was held in Pittock v. O'Neill, 63 Pa. 253: "Had the publication been confined to the petition filed in the court of common pleas for a divorce, it might have been considered as privileged and the plaintiff held bound to prove express malice, but the comments which accompanied it deprived it of its privilege. It has been held to be libelous to publish a highly colored account of judicial proceedings mixed with the party's own observations and conclusions: Stiles v. Nokes, 7 East, 493; Lewis v. Clement, 3 Barn. & Ald. 702." If the plaintiff had occupied any relation to the public which made it proper to publish the facts in relation to her everyday life or if the article in question had pretended to be the report of a judicial proceeding, it is possible that the manner in which the communication was published might have been a question for the jury. As was said in Wallace v. Jameson, supra, in which the plaintiff was a candidate for office: "While a fair account of the transaction which was the basis of the publication would have been privileged, the manner and style of this account and comment were for the consideration of the jury, to determine if the privilege had been exceeded, and were properly submitted to them for that purpose." In the case under consideration, however, the proper basis for the publication is lacking, inasmuch as the plaintiff occupied no relation to the public which

made it proper to publish the details of her private affairs, nor were there any other facts in the case which brought it within the rule of being made upon a proper occasion.

The publication was libelous per se. It was said in Pittock v. O'Neill, supra: " As our declaration of rights succinctly expresses it, the jury have the right to determine the law and the facts in indictments for libel as in other cases. But in civil cases the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true; and, if that instruction is disregarded, the verdict will be set aside, as contrary to law." The only justification for the libel in this case was the truth of the facts stated in the publication and this would seem to have been the only question for the consideration of the jury. There was scarcely a pretense at the trial that the facts were true. Even if the reporter had been the agent of the defendant, the information upon which he prepared the article, coupled with the fact that he had been informed that no one bearing the name of the plaintiff lived at the place at which the alleged aggravated assault and battery took place, was clearly insufficient to constitute reasonable or probable cause : Shelly v. Dampman, 1 Pa. Superior Ct. 115. These assignments of error are, therefore, all overruled.

Complaint is made by the appellant that it was not allowed to ask the reporter " whether or not the information that you received from those parties tended to convince your mind as to the probability of the story told you by Mr. Bowers." The objection to this question was properly sustained. The subject of inquiry was not the mental processes of the witness but the facts upon which probable cause was to be based. The testimony was, therefore, properly excluded, as was also that offered by the defendant and rejected by the court which relates to the fact of the assault and battery having been committed. The question was not whether Bowers had been beaten but whether the plaintiff had beaten him. Inasmuch as the offer does not propose to show that the plaintiff was present and by its very form practically admits that she was not present, the mere fact of the beating, so far as she was concerned, and for the purposes of the trial of the action for libel, was irrelevant and entirely immaterial.

The instruction of the court as to the measure of damages

was neither very full nor very explicit but it was not erroneous and, if the defendant had desired more specific instructions upon that subject, it should have asked for them; and, as this is the only subject upon which the charge of the court, as we view the case, can be said to be in any sense inadequate, the sixth and seventh assignments are not sustained.

The publication being libelous per se, malice was to be inferred and it was not necessary to prove express malice nor special pecuniary damages to entitle the plaintiff to recover. Unless, therefore, the facts contained in the publication were true, she was entitled, as damages, as stated by the court, to " a fair compensation for injury resulting to her from the publication of the article."

The facts were for the jury and, under no circumstances, as they were developed would the court have been justified in affirming the defendant's first point " that under the pleading and evidence the verdict should be for defendant." We see no objection to the form in which the court submitted the questions referred to the jury for their finding: " Is the article libelous, under the definition which I have given you; and, if it is, then are the statements contained in the article true ?" Taken in connection with the sentence which precedes that to which exception is taken, " because if they (the statements in the article) are true, although the statement may be libelous in its character, if true, that is a defense to the action." The fifth and eight assignments are, therefore, also overruled.

Upon a careful consideration of the entire record, we find no reversible error and the judgment is, therefore, affirmed.