# Reiners's License.

*Liquor law—Refusal of licenses—Associate judges—Bias of judges.*

The action of a license court consisting of a president judge and two associate judges unlearned in the law in refusing a liquor license will not be reversed by the appellate court, because of a charge that prior to the election of the associate judges, newspaper advertisements and other publications had been issued to the effect that the candidates, if elected, would refuse all liquor licenses, where there is no evidence to show that such publications had been authorized by the candidates or made with their sanction, and the associates deny that they were biased, and assert that they had done nothing to disqualify themselves and the president judge finds that they were not biased, by refusing an order to disqualify them.

Argued Oct. 27, 1914. Appeal, No. 72, Oct. T., 1914, by H. D. Reiners, from order of Q. S. Huntingdon Co., Feb. Sessions, 1914, No. A, refusing a wholesale liquor

license In re Application of H. D. Reiners. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Petition for a wholesale liquor license.

Petition for disqualification of associate judges.

The petition to disqualify the associate judges averred, inter alia, as follows:

2. That the two associate judges of this court, E. M. BEERS and W. B. McCARTHY, were elected on November 4, 1913, and inducted into office on the first Monday of January, 1914.

3. Your petitioner avers that for many weeks prior to the election of the two associate judges the campaign lines were very closely drawn, upon but one issue under the nonpartisan ballot law; and that issue was the granting of licenses or the refusal of licenses. During a long time prior to the election the newspapers of the county were filled with advertisements and handbills, and circulars were distributed, calling upon the temperance influence of the county to support at the polls, Messrs. BEERS and McCARTHY; and these advertisements alleged that if these two men were so fortunate as to be elected, that then the applicants for licenses would have the prayers of their petitions refused.

4. Your petitioner further avers that the two elected associate judges, E. M. BEERS and W. B. McCARTHY, at no time denied the allegations of the advertisement above referred to, and your petitioner further avers that it was common knowledge, and is still, in this community, that these two men, regardless of all else, are pledged to refuse all applications for liquor licenses that come before them. Your petitioner further avers that were they not so to do they would be breaking a tacit pledge and understanding, that they publicly, openly and notoriously had with the influences behind their election.

Annexed to the petition were various publications relating to the candidacy of the associate judges.

192      REINERS'S LICENSE.

Opinion of Court below—Opinion of the Court.    [59 Pa. Superior Ct.

Subsequently Woods, P. J., filed the following opinion:

The Court: On Thursday evening, February 26, counsel representing the applicants of these applications, spoke to the president judge on his way home from Bedford, and said that he had a petition asking that the associate judges be disqualified, and that at that time the president judge refused to hear it at chambers, and told him he better present it in open court.

The Court: The associates do not feel they have done anything to disqualify them.

The Court: And now March 2, 1914, the prayer of the petitioner refused to which petitioner excepts and bill sealed.

On the application for the license the court made the following order:

And now March 3, 1914, after a full hearing both on the part of the petitioners for and the remonstrants against the granting of a license to the within applicant and after due and careful consideration of the case taking into consideration the number and character of both the petitioners for and the remonstrants against, the within license is refused.

*Errors assigned* were the orders of the court as above, quoting them.

*William Wallace Chisolm* and *Samuel Spyker*, for appellant, cited: Franklin County Liquor Licenses, 41 Pa. C. C. Rep. 597; Com. ex rel. v. Havard, 9 Pa. Dist. Rep. 493; Johnson's App., 156 Pa. 322; Pollard's Petition 127 Pa. 507.

*Robert A. Orbison*, for appellees, cited: Phila. v. Fox, 64 Pa. 169; Phila. Library Co. v. Ingham, 1 Whart. 72; Wallace v. Jameson, 179 Pa. 98.

OPINION BY RICE, P. J., February 24, 1915:

The statute declares that the court of quarter sessions shall fix, by rule or standing order, a time at which

application for liquor license shall be heard, "at which time all persons applying or making objections to applications for licenses may be heard by evidence, petition, remonstrance or counsel." The right given by the statute is to be heard by evidence and petition, not simply by evidence or petition, and this implies a right to have both evidence and petition considered by the court when both are presented and are pertinent. Courts sit to administer the law fairly, as it is given to them, and not to make or repeal it. "The act of deciding is judicial, and not arbitrary or willful. The discretion vested in the court is, therefore, a sound judicial discretion; and to be a rightful judgment it must be exercised in the particular case and upon the facts and circumstances before the court, after they have been heard and duly considered; in other words, to be exercised upon the merits of each case, according to the rule given by the act of assembly. To say that I will grant no license to anyone or that I will grant it to every one is not to decide judicially on the merits of the case, but to determine beforehand without a hearing or else to disregard what has been heard. It is to be determined not according to law, but outside of law, and it is not a legal judgment, but the exercise of an arbitrary will:" Schlaudecker v. Marshall, 72 Pa. 200. Obviously, therefore, no judge whose duty it is to hear and decide has a legal or moral right to disqualify himself to render a just decision, by determining before hearing that he will grant all applications or refuse all applications. Of what avail is a hearing before such a tribunal? It would be a mere idle ceremony, discreditable to the court that conducted it and tending to bring the administration of law into contempt. As well might the judge refuse to hear, as to publicly pledge himself or secretly resolve not to consider and be guided by the pertinent facts and circumstances brought before him at the hearing or of which he has knowledge, and the law applicable thereto. Nowhere has the principle been more forcibly expressed than in the

following excerpt from the opinion of Judge DEAN in Gross's License, 161 Pa. 344: "For example, if a judge should refuse a license, because in his opinion the law authorizing licenses is a bad law, or if he should grant all licenses because he believed the law wrong as tending to confer a privilege on a special few, in either case there would be no exercise of judicial discretion; both would be the mere despotic assertion of arbitrary will by one in power, that sort of lawlessness which is least excusable and excites most indignation." There is no authoritative decision, or properly understood dictum in any authoritative decision, which gives countenance to a different doctrine.

It is contended that these principles were violated by the associate judges; to be more specific, that they were disqualified to sit at the hearing of liquor license applications because each of them had made a pledge that in the event of his election to the office he would refuse all such applications. This is a grave charge. It implies an accusation that each of these judges had made a pledge the keeping of which would disqualify him, in this class of cases, to give such hearing and decision as the law and his oath of office require a judge of the quarter sessions to give. As was said in Gross's License, supra, an appellate court will not assume the truth of such an accusation "without incontrovertible evidence of record." Does the record furnish such evidence? Before the hearing the applicant for license presented to the court, all of the judges being present, a petition praying, in effect, that the two associate judges be declared disqualified to sit at the hearing of his application, and that the hearing be had before the president judge sitting alone. We shall not undertake to recite the averments of this petition at length. It is sufficient for present purposes to say that the petitioner averred that, prior to the election of the associates in the preceding fall, numerous appeals by circulars, by handbills, by newspaper advertisements

and other publications, were made to the electors to vote for these two candidates, and in these appeals the assertion was made that if they were elected "applicants for licenses would have the prayers of their petitions refused." The only one of these publications that was specifically set forth in the petition was an advertisement inserted by the "Inter-Denomination Temperance Committee" in a semiweekly newspaper published in the county. This publication was evidently intended to, and doubtless did, convey the impression to those who read it, that these men were "the two and the only two candidates on a no license platform." But it is to be observed the petition did not allege that either of these candidates had ever said anything as to what he would do with regard to liquor license applications if he was elected; nor did it allege that these publications were made by their direction or by anyone authorized to speak for them; nor, so far as appears, was it asserted in the publications themselves that they were authorized by these candidates or made with their sanction. True, the petition averred that the candidates did not deny what had been asserted in these publications; also, "that it was common knowledge, and is still, in this community, that these two men, regardless of all else, are pledged to refuse all applications for liquor licenses that come before them;" also, "that were they not so to do they would be breaking a tacit pledge and understanding, that they publicly, openly and notoriously had with the influences behind their election;" also, that the "petitioner feels that the two associate judges have pledged themselves upon this question as specifically and plainly and literally as if they had signed a written statement or made a personal and public announcement at a mass meeting of the voters of the county." Serious as are these averments, yet, when they are carefully scrutinized, it will be seen that the petitioner's assertion that the associates were bound by a tacit pledge and therefore were biassed, is, after all, an inference drawn

by him, and, notwithstanding its plausibility, it is not
an absolutely necessary inference from the facts alleged.
Whether the associates were under or felt themselves
under such tacit pledge, and whether the state of their
minds on the license question was such as to constrain
them to refuse all licenses regardless of the facts and
circumstances developed, were matters of fact concⁱrn-
ing which they knew more than anyone else. Their
denial of the motion implies a denial of the imputed
bias and prejudice, especially as the order was accom-
panied with the express statement: "The associates do
not feel that they have done anything to disqualify
them." It is to be observed that no statutory dis-
qualification, resting on interest or relationship to the
parties, or the like, was alleged. The objection to the
associates' sitting was in the nature of a challenge for
bias or prejudice. The determination of it rested with
them and the president judge. As already intimated,
nothing but a plain abuse of discretion would justify an
appellate court in overturning their determination of it.
In Phila. Library Co. v. Ingham, 1 Whart. 72, the
defendant pleaded to the jurisdiction of the president
judge, that he had been concerned as counsel "touching
the same subject-matter." This plea was overruled,
and, on writ of error, the ruling was sustained, Chief
Justice GIBSON saying: "But the exception to the
jurisdiction is not sustained. We have already intimated
that an objection to competency, under the act for the
establishment of special courts, must be addressed to
the discretion of the judge himself; and this is con-
formably to the principle of the common law, which
exempts a judge from challenge. Nor can there be
danger in leaving the matter to him. A sense of duty
in keeping his administration not only pure but un-
suspected; and the reprobation that would ensue an
evident desire to favor a party by retaining the cause,
must always incline him to surrender it where he may
do so by the most comprehensive construction. Into

the supposed relations of the parties, therefore, we are forbidden to inquire; and we are bound to suppose that the legal discretion of the judge, in holding himself exempt from the bias incident to the imputed causes of it, has been soundly exercised." The principle was recognized in Phila. v. Fox, 64 Pa. 169, 185, and, in addition to Phila. Library Co. v. Ingham, supra, Justice SHARSWOOD cited Barrington v. Bank of Washington, 14 S. & R. 405, and Ellmaker v. Buckley, 16 S. & R. 71. In Wallace v. Jameson, 179 Pa. 98, where the validity of a plea asserting the disqualification of the president judge to try the case was involved, and it was asserted in the plea that he was "not an impartial, unprejudiced and indifferent judge with respect to the matters in issue," Justice MITCHELL said: "Objections which merely relate to the judge's personal opinions or feelings, and not to his legal interest in the case or the question, are not within the statute, and must be addressed to his discretion." The principle established by these cases is applicable here, and, without further elaboration, we conclude that the assignments of error must be overruled.

All the assignments of error are overruled and the order is affirmed.