Green *v.* Telfair.

[ALBANY GENERAL TERM, September 4, 1854. *Wright, Harris* and *Watson,* Justices.]

———————•-◦-◦———————

## GREEN *vs.* TELFAIR.

Whether matter contained in a publication is libellous or not, is a question for the decision of the court; but, if libelous, it is for the jury, and not the court, to say whether it is applicable to the plaintiff.

Thus where a libelous article did not point to any person in particular, but the plaintiff had expressly averred, in his complaint, that it was published of, and concerning himself, and he had proved some facts tending to sustain that averment; *Held,* that it should have been submitted to the jury to determine whether the libel was intended to apply to the plaintiff.

THIS was an action for libel and slander. It was tried at the Greene circuit, in November, 1852. The plaintiff was the keeper of the Greene county poor-house. The defendant was county physician, and also a coroner of the county. On the morning of the 4th of March, 1852, one Rebecca Southard, an invalid pauper, was found dead in her cell. An inquest was held by the defendant, at the instance of one of the superintendents of the poor. The jury found that the deceased " *came to her death sometime in the night of the* 3d *day of March,* 1852, *in consequence of the cold in her cell, and of a want of sufficient*

*clothing, bedding and proper care and attention."* This inquest the defendant procured to be published in the two public newspapers printed in the village of Catskill. It was for this publication, together with some alleged slanderous charges in relation to the same, subject, that this action was brought.

The plaintiff alleged, in his complaint, and proved upon the trial, that, on the 4th of March, 1852, and prior thereto, he was the keeper of the Greene county poor-house ; and that the power of governing the establishment and superintending its general management was vested in him as such keeper, and that by the rules and regulations which had been adopted by the superintendents of the poor, it became, and was, his duty to provide reasonable and kind attention for all such infirm and invalid paupers as were in and about the house, and to furnish care, attention, bedding and all things necessary and suitable for their comfort. The plaintiff then alleged in his complaint, that the defendant, knowing the premises and intending to injure him in his employment as such keeper, and to cause it to be suspected and believed that he, the plaintiff, had conducted himself negligently, carelessly and improperly as such keeper, had wrongfully, injuriously and maliciously published *of and concerning him, the plaintiff, in the way of and in respect to his business and employment as such keeper,* and *of and concerning his conduct as such keeper,* and of and concerning the cause which produced the death of the said Rebecca Southard, a certain false, scandalous, malicious and defamatory libel, and then stated as such libel, the coroner's inquest as above set forth.

Upon the trial, the plaintiff's counsel claimed the right to have the question submitted to the jury, whether the averments of extrinsic facts contained in the complaint had not been established, and whether the defendant did not intend by the publication to charge that the death of Rebecca Southard had been occasioned by the neglect of the plaintiff as keeper, and whether such publication was not so understood by persons who read the article in the papers ; which claim was overruled and denied by the judge, who ruled and decided that the article published did not point to any individual in particular ; that it might as well

be said to point to the superintendents, or to other officers, nurses or servants of the establishment, as to the plaintiff, and that the plaintiff could not recover for such publication, in this action.    To this decision the counsel for the plaintiff excepted.

The judge charged the jury that the words alleged in the complaint to have been spoken by the defendant, were admitted by the answer, and if these words related to the conduct of the plaintiff in his employment as keeper of the county poor-house, they were actionable, and the plaintiff would be entitled to their verdict, unless the justification had been sustained.    The jury rendered a verdict in favor of the plaintiff for six cents damages. The plaintiff moved for a new trial upon a case and exceptions.

*L. Tremain,* for the plaintiff.

*H. Hogeboom,* for the defendant.

*By the Court,* HARRIS, J.  It seems to have been assumed upon the trial, that the article published by the defendant, if it was intended to apply to the plaintiff, was libelous.    The plaintiff had expressly averred that it was published of and concerning himself.    He had proved some facts tending to sustain that averment.    Whether or not the matter contained in the publication was libelous, was, indeed, a question for the decision of the court, but if libelous, it was for the jury, and not the court, to say whether it was applicable to the plaintiff.

The allegation in the article which constitutes the alleged libel is, that the pauper mentioned died from the want of proper care and attention.    The charge implies that somebody had been guilty of culpable neglect.    Who it was that had been thus guilty, cannot be ascertained from the article itself.    The judge was right, therefore, when he said that " the article did not point to any individual in particular."    No one by reading the article, without the knowledge of any other facts, would suspect that it was intended to censure the plaintiff, more than any other person.    Yet the plaintiff insists that the charge of neglect, contained in the publication, was aimed at him, and at no one else.

To show this, he resorts to facts which do not appear upon the face of the alleged libel. He shows that he was the keeper of the establishment in which the pauper was alleged to have frozen to death—that its government and general superintendence was committed to him—that by the rules and regulations which had been adopted by the superintendents of the poor for the government of the house, it had been declared to be his duty as keeper to provide seasonable and kind attention for the sick and infirm, and to make them comfortable. Upon such evidence the plaintiff claimed to have the case submitted to the jury upon the question whether, when the defendant published the article, he did not intend to impute to the plaintiff the blame of having, through neglect, caused the death of Mrs. Southard. I think the facts proved were sufficient to carry the cause to the jury upon that question. What their verdict might have been, it is unnecessary to conjecture. It is enough, upon the present occasion, to see that the evidence in the case was such as would have warranted the jury in finding that the censure, so clearly implied in the article published, was intended for the plaintiff.

The province fo the court as well as the jury, in cases like this, was clearly defined in *Van Vechten* v. *Hopkins*, (5 *John.* 211.) In that case, it was charged in the alleged libel, that certain leading federalists had entered into a corrupt coalition with the friends of Morgan Lewis to elect the latter governor. There was nothing upon the face of the publication from which it could be seen that the plaintiff was one of the parties intended. But the plaintiff had averred that the publication was made of and concerning himself, as well as other citizens of the state belonging to the political party denominated federalists, and, to show that he was intended, he had stated in his declaration, and proved upon the trial, certain facts which did not appear upon the face of the alleged libel. The cause was tried before Mr. Justice Spencer, who decided, as the learned judge who presided at the trial of this action decided, that the *libel itself* did not afford sufficient evidence that the plaintiff was intended. A new trial was granted, upon the ground that the judge at the circuit had

Green *v.* Telfair.

erred in not submitting it to the jury to say, from all the evidence in the case, whether it was not intended to charge the plaintiff as being one of the parties to the agreement set forth in the publication. "The averment of extrinsic matter in this declaration," said Van Ness J., in delivering the opinion of the court, "was for the purpose of showing that the libel was published, as it is expressly alleged to have been, of and concerning the plaintiff. *And whether it was so published or not, is a question of fact, which it is the province of the jury and not of the court to decide.*" And again he says, "There are cases in which, as in the case now under consideration, the words in themselves amount to a libelous charge upon some particular person, but where that person is so ambiguously described as that without the aid of extrinsic facts, his identity cannot be ascertained, but where, by the introduction of proper averments and a *colloquium*, the words may, notwithstanding, be rendered sufficiently certain to maintain an action. The certainty is arrived at by taking into consideration both the extrinsic facts stated in the averments and *colloquium* and the whole of the libel, all of which must be submitted to the jury, under the direction and charge of the judge, as in other cases." (*See also* 1 *Am. Leading Cases, 3d ed.* 138.)

Upon the ground, therefore, that it was error to withhold from the jury the decision of the question as to the application of the article published by the defendant, I am of opinion that there should be a new trial.

[ALBANY GENERAL TERM, September 4, 1854. *Wright, Harris* and *Watson,* Justices.]