## Pittock and Mills *versus* O'Niell.

| | |
|---|---|
| 63 | 253 |
| 139 | 340 |
| 63 | 253 |
| 152 | 189 |
| 63 | 253 |
| 179 | 116 |

1. The quality of an alleged libel as it stands on the record, either simply or as explained by averments and innuendoes, is purely a question of law for the court.

| | |
|---|---|
| 63 | 253 |
| 33 SC | [5]429 |

2. Both in civil and criminal cases, the court may express to the jury their opinion whether the publication is libellous.

| | |
|---|---|
| 63 | 253 |
| 36 SC | [2]253 |
| 36 SC | [2]257 |
| f 36 SC | [6]258 |

3. In criminal cases, the court is not bound to express their opinion; if they do, it is not binding on the jury, and if the verdict is for the defendant, a new trial cannot be granted against his consent.

| | |
|---|---|
| 63 | 253 |
| f39SC[3]170 | |

4. The jury has the right to determine the law and the facts in indictments for libel as in other cases.

5. In civil cases, the court is bound to instruct the jury as to whether the publication is libellous, supposing the innuendoes to be true.

6. Where words are of a dubious import, the plaintiff may aver their meaning by innuendo, and the truth of the innuendo is for the jury.

7. A libel is any malicious publication, written, printed or painted, which by words or signs tends to expose a man to ridicule, contempt, hatred or degradation of character.

8. Where there is a publication of judicial proceedings, mingled with the publisher's observations, &c., the general principle is, that if the publication, either in itself or in connection with extrinsic facts, be defamatory, malice is an inference of law, which the jury is bound to find by direction of the court.

9. An act, unlawful in itself and injurious to another, is considered to be done *malo animo*.

November 13th 1869.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county*: No. 159, to October and November Term 1869.

This was an action on the case for libel, to December Term 1867, by Daniel O'Niell against John W. Pittock, James Mills and James B. O'Niell.  On the trial there was no evidence against

J. B. O'Niell, and the court directed the jury to find a verdict for him. The other defendants were publisher and editor of a newspaper published in Pittsburg, called "The Sunday Leader."

The publication complained of was made in the Sunday Leader, April 21st 1867, and is as follows:—

"THE LATEST DIVORCE SENSATION.—An application for divorce by an injured husband. A terrible story of domestic treachery and guilt.

"There was a great deal of excitement in certain circles in this city yesterday, growing out of developments made in regard to an application to the Court of Common Pleas for a decree of divorce. It is no pleasant duty to record these frequently occurring instances of domestic infelicity; but the custom has become sanctioned by usage, and we believe in the end its results are beneficial, in so far as it holds up to public scorn and condemnation those for whom the law affords no adequate punishment, and whose crimes carry in their train household ruin and the wreck of domestic happiness. Such a case we have now to deal with, and it is one characterized by the most shameless treachery and hypocrisy. The annexed petition filed in the Court of Common Pleas yesterday, gives the names of the parties to the proceeding now pending, and the alleged cause of the divorce asked for:"

Then followed the petition, by J. B. O'Niell, for divorce in the usual form, alleging that the plaintiff had committed adultery with petitioner's wife.

The publication proceeded:

"Mr. Daniel O'Niell referred to in this petition, is a member of the Common Council from the Second Ward, and has considerable local reputation as a journalist. He is a first cousin and brother-in-law of the applicant for divorce, having married his sister some twelve years ago in Ireland. This lady died in June last, and her husband was again married last Thursday to a young lady of Allegheny, and is now absent from the city on a wedding tour. We have further details of this scandalous affair, but withhold them until the party upon whom the great weight of the public odium must fall, returns to the city, and has an opportunity of being heard in his own defence."

The declaration set out the publication with appropriate innuendoes as to the persons mentioned in it.

The plea was not guilty.

There did not appear, on the trial before Sterrett, P. J., to be any dispute as to the publication of the alleged libel.

The defendants submitted points, two of which were disaffirmed by the court.

The court, after referring to the facts and defining a libel and explaining the law in regard to it, proceeded:—

"The writer of the article complained of appears to have taken for his text the petition of James B. O'Niell for divorce, filed in

[Pittock v. O'Niell.]

this court shortly before the date of the paper given in evidence. [Taking the whole article together, the petition for divorce and the comments upon it, there can be no doubt that it is libellous and grossly so. It is of a character tending necessarily to injure the reputation of the plaintiff and expose him to public hatred and contempt.]

"In a criminal prosecution for libel, the defendant cannot—except in particular cases—justify and prove the truth of the libellous expressions for the reason that the injury to the public morals and the tendency to provoke a breach of the public peace is about as great when the libellous matter is true as when it is false. The object of a criminal prosecution is, as already stated, to redress the public wrong, but in a civil action for damages the defendant may, if he is able to do so, put in a plea of justification and prove the truth of the allegation contained in the alleged libel.

"In this case the defendants have not attempted to justify and prove the truth of the alleged libel. Their plea is not guilty, and this virtually concedes the falsity of the libellous matter contained in the article before you. It was therefore unnecessary for the plaintiff to offer any evidence tending to show that they were false.

"It is necessary however for the plaintiff to prove to your satisfaction that the libel was published by the defendants, and on this point considerable testimony has been given. [If the evidence satisfies you that it was published by them, the burthen is then thrown upon them of disproving malice in the publication by showing justification, extenuation or excuse.]" * * *

The jury found for the plaintiff against Pittock and Mills for $1000. They took a writ of error and assigned for error, the answers to their points and the portions of the charge included in brackets.

T. M. Marshall, for plaintiffs in error.—When the article is not per se libellous the jury is to decide: Graves v. Walter, 19 Conn. 90; Hakewell v. Ingram, 28 Eng. Law & Eq. 413, 2 Green. Ev. § 411. The defendants had a right from good motives, and for the information of the public, to publish the petition for divorce and comment on it, and therefore whether libellous or not should have been submitted to the jury: Parmiter v. Coupland, 6 M. & W. 105; Mix v. Woodward, 12 Conn. 287; Huff v. Bennet, 4 Sandf. 120; Newman v. Atto, Id. 668; Snyder v. Andrews, 6 Barb. 43; People v. Croswell, 3 Johns. Cases 336; Townsend on Law of Libel, § 69 and note 55, §§ 282, 284, 285, 288; Lancey v. Bryant, 30 Maine (17 Shep.) 466; Powis v. Smith, 5 B. & Ald. 850; Abrams v. Smith, 8 Blackf. 95; Townsend on Law of Libel 379, and notes 1145, 1447, 1448; Heard on Libel, §§ 89,

90, 103, 110; Insurance Company v. Walden, 12 Johns. 513; Haight v. Cornell, 15 Conn. 74; Howard v. Thompson, 21 Wend. 319. The publication was a privileged publication, and it was incumbent upon plaintiff to prove malice: Gray v. Pentland, 2 S. & R. 23; s. c., 4 Id. 420; 2 Greenleaf on Evidence, § 418; Thorn v. Blanchard, 5 Johns. 508; Vanderzee v. McGreggor, 12 Wend. 545; White v. Nicholls, 3 How. 266; Gilpin v. Fowler, 26 Eng. Law & Eq. 386.

*J. H. Hampton* and *A. M. Brown*, for defendant in error.— It was for the court to construe the language of the publication and determine whether it was libellous *per se*: Townsend on Libel, § 286; Green v. Telfair, 20 Barb. 11; Fry v. Bennett, 5 Sandf. 54; Snyder v. Andrews, 6 Barb. 43; Hunt v. Bennett, 19 N. Y. 173; Hakewell v. Ingram, *supra*; Shattuck v. Allen, 4 Gray 541. The charges in the article were unequivocal; and the plaintiff clearly indicated by his name, business, &c., it was a libel *per se*: Townsend on Libel, § 176, and notes. It is only where the words are of dubious import that the jury is to construe them: Hays v. Brierly, 4 Watts 392; Van Vechten v. Hopkins, 5 Johns. 211. "Not Guilty" admits the falsehood of the words, and does not raise the question of privileged publication; nor under this plea can there be evidence to disprove malice: Townsend on Libel, § 40; Thomas v. Danaway, 30 Ill. 373; Chapman v. Calder, 2 Harris 365; Minesinger v. Kerr, 9 Barr 312; Kay v. Fredrigal, 3 Id. 221; Petrie v. Rose, 5 W. & S. 364; Barger v. Barger, 6 Harris 489.

Malice is implied from an untrue publication: Townsend, § 77, 78, and notes 76, 77, 80, §·287, 288; Littlejohn v. Greeley, 13 Abb. Prac. Reps. 55; Howard v. Sexton, 4 Comst. 157–160; 2 Greenleaf on Evidence, § 410–421. They referred also to 2 Wharton's Am. Crim. Law, 2561–2572, 2577–2581; 2 Archbold's Crim. Law, 245, 246, and notes; Commonwealth v. Culver, 2 Penna. L. J. 362; Donelly v. Public Ledger, 2 Phil. Reps. 57; Elliott v. Boyles, 7 Casey 65.

The opinion of the court was delivered, January 3d 1870, by SHARSWOOD, J.—As the rule is well expressed by an approved elementary writer,—" the quality of the alleged libel as it stands on the record, either simply or as explained by averments and innuendoes, is purely a question of law for the consideration of the court:" 2 Starkie on Slander and Libel 281. That this was the law in England, both in civil and criminal proceedings, up to 1792, was maintained so rigidly that nothing was submitted to the jury in such cases but the fact of publication and the truth of the innuendos: Rex v. Woodfall, 5 Burr. 2661; The King v. The Dean of St. Asaph, 3 T. R. 428, note; The King v. Withers, 3

[Pittock *v.* O'Niell.]

T. R. 428. In consequence of these decisions the statute of 32 Geo. 3, c. 60, commonly known as Mr. Fox's Act, was passed. This statute is confined in terms to trials of indictments or informations, when an issue or issues are joined between the king and the defendant or defendants on the plea of not guilty pleaded, in which case it declared and enacted that the jury may give a general verdict of guilty or not guilty upon the whole matter put in issue, and should not be required or directed to find the defendant guilty merely on proof of the publication, and of the sense ascribed to the same in the indictment or information. By the second section it was provided "that on every such trial the court or judge, before whom such indictment or information shall be tried, shall, according to their or his discretion, give their or his opinion and direction to the jury on the matter in issue between the king and the defendant or defendants, in like manner as in other criminal cases." It has never been pretended that this statute had any application to civil actions: Levi *v.* Milne, 4 Bingh. 195; and its obvious intention was merely to restore to juries their common-law right to give a general verdict in cases of libel, just as in other criminal cases, of which they had been unconstitutionally deprived. Hence the law was carefully made declaratory. The seventh section of the ninth article of the Constitution of Pennsylvania has expressed the same constitutional doctrine and incorporated it with the Declaration of Rights. "In all indictments for libels the jury shall have a right to determine the law and the facts, under the direction of the court, as in other cases." There can be no doubt that both in criminal and civil cases the court may express to the jury their opinion as to whether the publication is libellous. The difference is, that in criminal cases they are not bound to do so, and if they do, their opinion is not binding on the jury, who may give a general verdict in opposition to it, and if that verdict is for the defendant, a new trial cannot be granted against his consent. As our declaration of rights succinctly expresses it, the jury have the right to determine the law and the facts in indictments for libel as in other cases. But in civil cases the court is bound to instruct the jury as to whether the publication is libellous, supposing the innuendoes to be true, and if that instruction is disregarded, the verdict will be set aside as contrary to law.

In England the courts have recently disregarded, to some extent, this plain distinction between criminal and civil proceedings. It appears to be put upon the ground that Mr. Fox's Act, though limited in terms to indictments and informations, was declaratory of the law in all cases of libel; upon what principle of construction, however, it is not very easy to understand. It is there the approved practice for the judge in civil actions, after explaining to the jury the legal definition of a libel, to leave to them the

13 P. F. SMITH—17

question whether the publication upon which the action is founded falls within that definition: Folkard's Starkie 202; Baylis *v.* Lawrence, 11 Ad. & Ell. 920; Parmiter *v.* Coupland, 6 M. & W. 105; Campbell *v.* Spottiswoode, 3 B. & S. 781; Cox *v.* Lee, 4 Exch. Law Rep. 284. These cases were followed in Shattuck *v.* Allen, 4 Gray 540.

Yet it is clearly held that a verdict for the defendant upon that issue will be set aside and a new trial granted: Hakewell *v.* Ingram, 28 Eng. Law & Eq. Rep. 413. "Though in criminal proceedings for libel," said Jervis, C. J., "there may be no review, in civil matters there are cases in which verdicts for the defendant are set aside upon the ground that the matter was a libel, though the jury found it was not." This must be conceded to be an anomaly; and it will be best to avoid a practice which leads to such a result. The law, indeed, may be considered as settled in this state by long practice, never questioned, but incidentally confirmed in McCorkle *v.* Binns, 5 Binn. 340, and Hays *v.* Brierly, 4 Watts 392. It was held in the case last cited that where words of a dubious import are used the plaintiff has a right to aver their meaning by *innuendo*, and the truth of such *innuendo* is for the jury. In New York, since the recent English cases, the question has been ably discussed and fully considered in Snyder *v.* Andrews, 6 Barb. 43; Green *v.* Telfair, 20 Barb. 11; Hunt *v.* Bennett, 19 N. Y. 173, and the law established on its old foundations.

A libel may be defined to be any malicious publication, written, printed or painted, which, by word or signs, tends to expose a man to ridicule, contempt, hatred or degradation of character: 1 Am. Lead. Cases 109; McCorkle *v.* Binns, 5 Binn. 340. The publication set forth in the declaration in this case, and given in evidence, was unquestionably a gross libel. Its language is clear and unambiguous, and it may be doubted whether, taken altogether, it needed any *innuendo* to point it to the plaintiff. Such *innuendoes* are given, however, and we must consider their truth to have been found by the jury. Its avowed purpose was to hold up the plaintiff below to public scorn and condemnation, as guilty of a crime carrying in its train household ruin and the wreck of domestic happiness. It denounced the act imputed to him as one characterized by the most shameless treachery and hypocrisy. No words could have been used more directly calculated to excite against him public hatred, or to degrade his character. Had the publication been confined to the petition filed in the Court of Common Pleas for a divorce, it might have been considered as privileged, and the plaintiff held bound to prove express malice: Curry *v.* Walter, 1 Bos. & Pul. 523; McLaughlin *v.* McMakin, Bright. Rep. 132; Nuff *v.* Bennett, 4 Sanf. 120. But the comments which accompanied it deprived it of its privilege. It has

[Pittock v. O'Niell.]

been held to be libellous to publish a highly colored account of judicial proceedings mixed with the party's own observations and conclusions: Stiles v. Nokes, 7 East 493; Lewis v. Clement, 3 Barn. & Ald. 702. In such a case the general principle is, that if the publication, considered either by itself or in connection with extrinsic facts, be defamatory, malice is an inference of law, which the jury are bound to find according to the direction of the court: 2 Starkie on Slander and Libel 322. "I take it to be a general rule," said Abbott, C. J., in Duncan v. Thwaites, 3 B. & C. 556, "that an act unlawful in itself and injurious to another is considered, both in law and reason, to be done *malo animo*; and this is all that is meant by a charge of malice in a declaration of this sort, which is introduced rather to exclude the supposition that the publication may have been on some innocent occasion, than for any other purpose."

These considerations dispose of the third and fourth assignments of error, and the first and second not being *secundum regulam*, must be treated as none.

Judgment affirmed.

READ, J., dissented.