Burkhart, Appellant, v. North American Company.

214 — 39
36 SC 424

*Libel—Evidence—Professional reputation.*

Where at the trial of an action for libel there is no attack of any kind, open or covert, on plaintiff's reputation, evidence of the plaintiff's professional reputation is inadmissible.

Where in an action for libel by a bassoon player against a newspaper, it appears that the plaintiff was designated in the article not by his name, but by a general reference to the instrument which he played, it is not error to affirm a point of the defendant to the effect that "if the jury believe that the article published does not designate or identify the plaintiff the verdict would be for the defendant."

The truth of the facts published is in general a defense in a civil action for libel, though the benefit of such defense may be lost where the matter described is a private one, with which the defendant or the public has no legitimate concern, or where even if the substance of the matter was proper the manner and style rendered the publication libelous.

Argued Jan. 15, 1906.  Appeal, No. 282, Jan. T., 1905, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1903, No. 3407, on verdict for defendant in case of Harry L. Burkhart v. The North American Company.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Trespass for libel.  Before BARRATT, J.
The alleged libelous article was as follows:

" Mrs. Carter Victor in War on Orchestra.
"Stubborn Musicians Nearly Prevented Performance
of ' Du Barry ' at the Broad.
" Discords Enraged Her.
"Row Behind Scenes Ends in Ejectment of Oboe, Bassoon
and Four Brasses.

" Those persons who were in the audience at the Broad Street Theater last Tuesday night will not know, until they read this, how near they came to being turned away without seeing the performance of ' Du Barry.'
" For a full half-hour before the curtain rose there was a

lively time behind the scenes, with David Belasco and Mrs. Carter as the contestants on the one side and representatives of Nixon & Zimmerman on the other. In the end the Belasco-Carter forces were victorious.

"It was all about the Broad Street Theater Orchestra. When the 'Du Barry' engagement began that organization was enlarged from eleven to seventeen pieces; Mr. Belasco paying more than half of the additional expense.

"Before the first performance there was ended Mrs. Carter complained that the discords of the orchestra had almost set her frantic, and she sent for Arthur Pell, her musical director, and instructed him to 'cut out' the extra pieces, which consisted of four brasses, an oboe and a bassoon.

### "But they Only Laughed.

"Mr. Pell obediently informed the brasses, the oboe and the bassoon to this effect, but to his amazement they discordantly laughed at him, saying that they had been engaged by Mr. Kearney, the leader of the Chestnut Street Theater Orchestra, who employs all musicians for the Nixon & Zimmerman theaters, and that only from him would they take their dismissal.

"The matter was then allowed to rest until Mr. Belasco should return from Atlantic City, Mrs. Carter vowing in the meantime that the frightful noises of those six 'extras' were rapidly ruining her nervous system.

"Mr Belasco arrived last Monday night, listened to a few bars of the overture and fled, with his fingers in his ears. When quiet had been restored he returned and notified the Nixon & Zimmerman representatives that unless the six wind compressors were discharged before the next night there would be no performance of 'Du Barry.'

"When the next evening arrived and Director Pell took his seat the six were still there, and when he ordered them out they again turned up their noses at him and asked him who he was, anyway ; they didn't know him ; they had been employed by Mr. Kearney, etc.

"Then Mr. Belasco and Mrs. Carter took action. They declared with unmistakable emphasis, that the curtain would not rise until the objectional sextette had been evicted, and Mrs.

Carter went so far as to produce her street costume, preparatory to leaving the theater.

## "Called Off by Kearney.

"At this interesting point the Nixon & Zimmerman authorities, represented by one Love, who felt anything but his name for the Belasco-Carter interests, called up Kearney over the 'phone and had Kearney call off the objectionable six.

"The curtain then arose and the performance proceeded, 'with just eleven-seventeenths of the previous amount of discord,' as one of the company phrased it.

"Apropos of the incident it is said, on good authority, that when the Rogers Brothers played at the Chestnut Street Theater they found the orchestra there so little to their liking that they had it exchanged for that of the Broad Street Theater, but when they got the latter it was so much worse that they asked and obtained the return of the first aggregation."

At the trial the court excluded under objection and exception evidence of the plaintiff's reputation as a musician.

Defendant presented the following points :

2. If the jury believe that the article published does not designate or identify the plaintiff, the verdict must be for defendant.   *Answer :* That point I affirm. [5]

3. If the article is substantially true as published, there can be no verdict for plaintiff.   *Answer :* That point I affirm. [6]

4. If the article correctly reports the fact of the plaintiff's discharge, and does not make any reflections or allegations respecting his professional competency, your verdict should be for defendant.   *Answer :* This point I affirm. [7]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions ; (5–7) above instructions, quoting them.

*William H. Burnett*, with him *Adolph Schewe*, for appellant.—Where the skill of a person is one of the questions in issue, evidence can be offered to prove it : 1 Wigmore on Evidence, sec. 87.

The jury should have been told that the identity of plaintiff could be proved by testimony outside of the article : Clark v. North American Co., 203 Pa. 346.

There must be a plea of justification to permit evidence of the truth : Porter v. Botkins, 59 Pa. 484 ; Kay v. Fredrigal, 3 Pa. 221 ; Updegrove v. Zimmerman, 13 Pa. 619 ; Smith v. Smith, 39 Pa. 441 ; Hartranft v. Hesser, 34 Pa. 117.

A libel on reputation is never justifiable : Hayes v. Press Co., 127 Pa. 642 ; Wallace v. Jameson, 179 Pa. 98 ; Wood v. Boyle, 177 Pa. 620 ; Republican Pub. Co. v. Miner, 20 Pac. Repr. 345 ; Krug v. Pitass, 76 Am. St. Rep. 317 ; Moore v. Francis, 18 Am. St. Rep. 810 ; McAllister v. Detroit Free Press Co., 15 Am. St. Rep. 318.

*James Gay Gordon*, for appellee.—It has long been established in Pennsylvania that in an action for libel the plaintiff cannot introduce evidence of reputation and character in his own behalf until, in some manner at the trial, his reputation is attacked by the defendant, for until then " the law presumes and the defendant admits that it is good : " Chubb v. Gsell, 34 Pa. 114 ; Petrie v. Rose, 5 W. & S. 364 ; Clark v. North American Co., 203 Pa. 346.

In every action for libel it is a necessary allegation, and must be proved that the thing complained of was published of and concerning plaintiff.   In this case it will be remembered that the plaintiff was nowhere named, and certainly was not referred to personally : Townshend on Libel & Slander, 629.

The truth is an answer to the action, not because it negatives the charge of malice (for a person may lawfully or maliciously utter slanderous matter, though true, and thereby subject himself to an indictment), but because it shows that the plaintiff is not entitled to recover damages : Odgers on Libel & Slander, 170 ; Townshend on Libel & Slander, 306 ; Oles v. Pittsburg Times, 2 Pa. Superior Ct. 130.

OPINION BY MR. CHIEF JUSTICE MITCHELL, February 12, 1906 :

The first four assignments of error are to the rejection by the learned judge at the trial of offers to show the high professional reputation of the plaintiff as a musician.   All the cases agree on the general rule that such evidence is not admissible until his reputation has been attacked.   In Clark v. North American Co., 203 Pa. 346, this subject was expressly consid-

ered and it was held that the attack which would open the rule need not be by direct testimony but might be indirectly through slurs and insinuations in cross-examination, and other ways equally damaging though covert. But in the present case there was no attack of any kind, open or covert, on plaintiff's reputation at the trial, and no occasion to deviate from the general rule.

The fifth assignment is to the affirmance of the defendant's point that: " If the jury believe that the article published does not designate or identify the plaintiff the verdict would be for the defendant. " It is conceded that the plaintiff was not referred to by name, and if he was indicated at all it was by a general reference to the musical instrument which he played on the occasion described. A party need not be named, if pointed to by description or circumstances tending to identify him: Clark v. North American Co., 203 Pa. 346, and in general it is the better practice for the judge to explain the law in this aspect clearly to the jury. But in the absence of request by plaintiff for specific instructions on this point, the answer of the court in view of the slight evidence looking to identification of the plaintiff could hardly be considered as erroneous, even if it stood alone. But it was part of a charge in which the jury were told that while the plaintiff was not specifically mentioned by name he complains: " That he is sufficiently identified in it from the fact that, as he was the only person in this orchestra who played an instrument called a bassoon, the article must necessarily refer to him. This is for you. Do you think that it does, or do you think that it does not? " This cannot be said to be inadequate in the condition of the testimony.

The remaining assignments to the affirmance of points that if the article as published was substantially true and if it correctly reported the facts without any reflection on plaintiff's professional capacity the verdict should be for defendant, do not require extended discussion. The truth of the facts published is in general a defense in a civil action for libel, though the benefit of such defense may be lost where the matter described was a private one with which the defendant or the public had no legitimate concern, or where, even if the substance of the matter was proper, the manner and style rendered the

publication libelous. The appellant has discussed the acts of 1897 and 1901 in reference to justification. But no question of justification arises in the case. It was neither pleaded nor set up by offers of evidence. The defense was that the article did no injury to plaintiff as it did not identify him at all, and even if it had done so it was not libelous. It is at least doubtful if this last claim would not have to be sustained if put to the court in a direct point : Collins v. Dispatch Publishing Co., 152 Pa. 187. The article was apparently not in itself libelous as to plaintiff. To ordinary apprehension the only person subjected to ridicule was Mrs. Carter whose whims were described in a somewhat sensational manner. But she, being of sensational temperament and in a sensational profession, does not seem to have objected to it. Plaintiff being an artist, with the artistic temperament, was perhaps unduly sensitive, but on a fair review of the whole matter we are obliged to agree with the jury that he had no real ground of complaint.

Judgment affirmed.