# Luckock *v.* Daily News Publishing Company, Appellant.

*Libel—Newspapers—Public officer—Privileged communication—Case for jury.*

A libel may be defined to be any malicious publication, written, printed or painted, which, by word or signs, tends to expose a man to ridicule, contempt, hatred or degradation of character.

In an action for libel, the case is for the jury and a verdict for the plaintiff will be sustained, where the evidence is sufficient to warrant the finding that the manner in which the article was published made it libelous, and that the publication had lost its privilege and was in no way justified by the actual facts in evidence.

A privileged article may be so published, and the account of it may be so highly colored, and accompanied by such offensive comments and observations, that the privilege, which would have inhered in a fair publication, is lost.

Argued April 29, 1920.   Appeal, No. 86, April T., 1920, by defendant, from judgment of C. P. Allegheny County, Oct. T., 1918, No. 829, on verdict for plaintiff in the case of Luke Luckock v. The Daily News Publishing Company.   Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Trespass for libel.   Before CARPENTER, J.

At the trial it appeared that the alleged libelous publication was as follows:

"ARREST BURGESS FOR STOPPING CAUCUS

"Politics in Chalfant Borough is no child's play.   It's a game for strong men—and the police.   Listen:

"In the opera house the other night, there was a conclave of Chalfant citizens.   Now the caucus wasn't called to indorse Burgess Louis Luckock for re-election— nay, nay.   In fact, its intent was just the opposite; it was to make arrangements for his political funeral. Burgess Luckock knew it, and by heck, if he could prevent it he would.   So with Burgess-like naivete, he called up

the opera house on the telephone and informed the citizens that he was going to raid the place—right then. And he did—try to. He arrived a few minutes later with one constable and one policeman, which made three. But the raid didn't materialize. The citizens stood their ground and when the burgess paused for want of breath they called the police and had him taken to the East Pittsburgh Police Station. 'He got noisy,' was the charge they made.

"The burgess had a hearing before Squire J. Skelton. He was discharged and the costs were divided between prosecutor and plaintiff. The funeral arrangements have not yet been completed."

*Errors assigned* were the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*A. L. Petty,* for appellant.—The publication was privileged as a report of judicial proceedings, and of the official conduct of a public officer: Briggs v. Garrett, 111 Pa. 404; Press Co. v. Stewart, 119 Pa. 584; Neeb v. Hope, 111 Pa. 145; Conroy v. Pittsburgh Times, 139 Pa. 334; McGeary v. Leader Publishing Co., 52 Pa. Superior Ct. 35; Good v. Grit Publishing Co., 36 Pa. Superior Ct. 238; Barr v. Moore, 87 Pa. 385; Rowand v. Decamp, 96 Pa. 493.

*A. L. Cramer,* for appellee.

OPINION BY HEAD, J., July 14, 1920:

In an action of trespass to recover damages because of the publication by the defendant of an alleged libelous article of and concerning the plaintiff, the latter recovered a verdict and judgment for twenty-five dollars. The defendant appeals.

In Pittock and Mills v. O'Neill, 63 Pa. 253, Mr. Justice SHARSWOOD thus defines a libel: "A libel may be defined

to be any malicious publication, written, printed or painted, which, by word or signs, tends to expose a man to ridicule, contempt, hatred or degradation of character." From an examination of this clear definition it will appear that it is just as offensive in the eyes of the law to attempt to subject a man to public ridicule or contempt as it is to charge him with a crime which would result in the degradation of his character. Naturally, and quite properly, this is true. There are no weapons more effective for the destruction of the peace of mind and happiness of a citizen than public ridicule or contempt.

We may agree that the article in question in the case at bar contained one statement of fact, to wit, the fact the plaintiff had been arrested, had a hearing and was discharged by the magistrate on the payment of one-half the costs, and, had the defendant confined the published article to a fair statement of this fact the publication would have been privileged. So the learned trial judge correctly instructed the jury. But it is no new doctrine that even a privileged article may be so published, the account of it may be so highly colored and accompanied with such offensive comments and observations, that the privilege, which would have inhered in a fair publication, is lost, and so the learned judge instructed the jury. No complaint is made of the single fact referred to which would have been privileged. It was the manner of publication, the coloring of its setting and the comments connected with it, none of which had any foundation in fact, that made the article libelous. The proper exercise of the right of free speech carries with it no license to thus hold up an inoffensive citizen to public ridicule and make him a laughing stock in his community. Under the charge of the court the verdict of the jury necessarily means they found that the manner of the publication made it libelous and that such a publication, so made, had lost its privilege and was in no way justified by the actual facts in evidence.

Upon a careful review of the record of the trial we can discover no reversible error. The assignments of error are therefore overruled.

Judgment affirmed.