## Costello et ux. v. Suleski et al.

*Felix & Felix*, for plaintiffs.

*David Wachtel* and *Philip Werner*, for defendants.

CRUMLISH, J., February 11, 1948.—This is an action in trespass for libel. Plaintiffs have filed a complaint in which they allege that in July 1946 Mr. and Mrs. Francis Fitzgerald and their infant daughter, being unable to find a house of their own after Mr. Fitzgerald's discharge from the United States Coast Guard, came to live with plaintiffs and occupied rooms in their house; that on October 10, 1946, while the veteran, his wife and child were still residing with plaintiffs, defendants, Theodore Suleski and Eleanor, his wife, who conduct a furniture store as partners at 3355 Frankford Avenue, Philadelphia, caused to be published in a neighborhood weekly newspaper, known as The Guide, and published by defendants, Ralph E. Mitosky and J. T. Shevlin, the following defamatory and libelous statement:

". . . VETERAN TO BE EVICTED FROM HIS 1-ROOM HOME

"Mr. Francis Fitzgerald, of 3944 Elsinore St., returned home four months ago after serving in the U. S. Coast Guard all during the war—but it seems he has more problems now than ever before. He along with his wife, Jean, and their baby are to be evicted Friday from their one-room home at the Elsinore St. address.

"Francis is a mechanic and is willing to pay up to $50 a month for some sort of an apartment. He did

his part during the war—now it is our part to do ours for him. Anyone that can help the Fitzgeralds call JE 5-3085. (Adv.)"

Plaintiffs further allege that such articles and advertisements are read and believed by their friends and neighbors; that the defamatory article complained of charged plaintiffs with a reprehensible and odious act, namely, threatening to evict a returned veteran, his wife and infant child from their home; that plaintiffs are well known to many of defendants' readers and that the article charged the owners of plaintiffs' house (3944 Elsinore Street) with this act; that due to the housing shortage such conduct was considered by right-thinking persons to be odious and reprehensible; that such an accusation was false since plaintiffs never told the Fitzgeralds that they were to be evicted nor did they have any intention of evicting them; that plaintiffs have been seriously injured by the defamatory article; that they were humiliated and shamed, have lost intercourse with their friends and neighbors who looked upon them with loathing and contempt; that, thereby, plaintiffs' reputations for being kindly, well-intentioned, public spirited and charitable persons were irreparably injured in the minds of those who knew them.

Defendants have filed preliminary objections alleging: (1) That the matter complained of is not libelous; (2) that it sets forth no cause of action; (3) that the innuendo is unreasonable, unwarranted and unjustified; (4) that plaintiffs are not named, described, or sufficiently identified, and (5) that the statement is not libelous per se, hence the averment of damages is improper.

1, 2, and 3. The first three objections may be considered together. Any malicious publication, written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred or degradation of character, is a libel: Runkle v. Meyer et al.,

3 Yeates 518; McCorkle v. Binns, 5 Binney 340; Pittock et al. v. O'Neill, 63 Pa. 253; Barr v. Moore, 87 Pa. 385, 390-91 (1878). Any publication injurious to the social character of another and not shown to be true or to have been justifiably made, is actionable as a false and malicious libel: Collins v. Dispatch Pub. Co., 152 Pa. 187, 189-90 (1893). The proposition that if a publication is capable of two meanings, it must be judged in mitiori sensu, is not the law in Pennsylvania: Boyer v. Pitt. Publishing Co., 324 Pa. 154, 158 (1936). It is for the court to determine whether a publication is fairly and reasonably capable of the meaning imputed to it in the innuendo, leaving it to a jury to say whether it actually conveys the meaning so ascribed to it: Naulty v. Bulletin Co., 206 Pa. 128, 134 (1903) ; Boyer v. Pitt. Publishing Co., supra; Bausewine v. Norristown Herald Inc., 351 Pa. 634, 643 (1945). However, if the words are not susceptible of the meaning ascribed to them by plaintiff and do not sustain the innuendo, the case should not be sent to a jury: Naulty v. Bulletin Co., supra, at p. 134; Commonwealth v. Swallow, 8 Pa. Superior Ct. 539, 613 (1898) and cases there cited. Tested by these rules, we are of the opinion that the words in the publication are capable of the libelous meaning ascribed to them in the innuendo. Whether that meaning was actually put upon them by others is for a jury.

4. Defendants' contention that plaintiffs are neither named nor sufficiently identified is also without merit. Of course, defamatory words must refer to some ascertained or ascertainable person and that person must be plaintiff. On the state of the record it must be taken that plaintiffs are the owners of the house, 3944 Elsinore Street. Whether those who knew plaintiffs made out plaintiffs as the persons meant is for the jury: Burkhart v. North American Co., 214 Pa. 39, 44 (1906).

5. The remaining objection is well taken. Clearly the publication is not libelous per se and it is well settled in Pennsylvania that in such case there must be an allegation and proof of special damages: Weaver v. Phillips, 231 Pa. 325 (1911); Pritchard v. Wenger, 268 Pa. 114 (1920); Bush v. Southwark National Bank, 8 D. & C. 27 (1926).

Accordingly, defendants' preliminary objections are sustained with leave to plaintiff to amend within 20 days, otherwise judgment of non pros.