## Munhall Homestead Housing Assn. v. Messinger Publishing Co.

2

Before O'Brien, Van der Voort and Brosky, JJ.

*Herman H. Magram*, for plaintiff.

*Robert W. McWhinney*, for defendant.

VAN DER VOORT, J., May 19, 1961.—Plaintiff, a nonprofit corporation, chartered under the laws of the Commonwealth of Pennsylvania, brought this action in trespass for libel against defendant, publisher of a daily newspaper, for the publication of a series of certain allegedly libelous articles in several issues of defendant's newspaper.

In its complaint as filed, plaintiff added an innuendo to each article, explaining the particular words used in order to show their defamatory character under the facts and circumstances existing at the time of the publication. The complaint thereafter contains averments that the statements were false, that they

were made maliciously and contains a claim for damages in excess of $5,000.

Defendant filed preliminary objections: (1) In the nature of a demurrer; (2) in the nature of a petition raising the defense of lack of capacity to sue, and (3) in the nature of a motion to strike portions of the complaint for lack of conformity to law.

This matter is before the court for decision on defendant's preliminary objections to the complaint.

### Facts

Plaintiff, the Munhall Homestead Housing Association, was chartered in 1955 under the laws of this Commonwealth, as a nonprofit corporation, for the purpose of purchasing and operating a 397-unit housing project, on a membership basis. It is a wholly private corporation with no public function. Plaintiff originally purchased the project from a United States Government agency, whose only interest remaining is that of a mortgagee.

Persons become members of the housing association by signing a mutual membership agreement and by paying a membership fee. Thereafter, they make periodic payments which are applied to the mortgage and to the utilities and to maintenance costs. As the mortgage principal is reduced, the equity of each individual member is increased. All but 20 of the units are occupied by members. The remaining 20 are held by the corporation for rental to nonmembers. The administration of the project is handled by a board of directors, elected by the members, who, in turn, elect the corporate officers.

Defendant published a series of articles appearing in 14 different issues covering the period from April 25 through September 7, 1960. These articles charged the housing authority with various kinds of mismanagement such as: (1) The hiring of an unqualified

attorney; (2) favoritism in the assignment of apartments; (3) excessive expenditures for maintenance, and (4) failure to carry insurance protection.

One of the articles published contained the following statement:

". . . this place will be a slum under the present tactics."

### Discussion

Defendant's first preliminary objection, in the nature of a demurrer, asked the court to declare as a matter of law without any trial that the publications complained of are not sufficient to state a cause of action in trespass. Defendant's position is that the statements set forth in the complaint are accompanied by innuendos, clauses of explanation, and that this manner of pleading is a recognition by plaintiff that the statements are not libelous per se.

Defendant then objects that the complaint sets forth no special damages and that the complaint is, therefore, insufficient in the law and vulnerable to a demurrer.

Taking up first defendant's claim that the accompany of libelous words by an innuendo in the complaint means that the pleader concedes that the alleged libelous statements are not libelous per se. This reasoning attributes to an innuendo a quality not supported in the law. The libelous quality of the publications is a matter for the determination of the court and is not controlled by the manner in which the publications are pleaded. The use or nonuse of an innuendo by the pleader does not change the quality of the publications. This is the law established by our Supreme Court. It is set forth in Hayes v. The Press Company, Ltd., 127 Pa. 642. In that case the court said, at page 648:

". . . The office of an innuendo is to aver the meaning of the language published, but if the common un-

derstanding of mankind takes hold of the published words, and at once, without difficulty or doubt, applies a libelous meaning to them, an innuendo is not needed, and if used may be treated as useless surplusage."

The complaint in this case sets forth a series of articles published over a period of 19 weeks. If any of the statements in the articles are libelous per se, the complaint is sufficient. If any of them are capable of libelous meaning and special damages are pleaded the complaint is also sufficient. It is not necessary that all the alleged defamatory words set forth in the complaint should be actionable, it being sufficient that some of them are actionable: Drebin v. Jewish World Publishing Company, 262 Pa. 169 (173), and Klumph v. Dunn, 66 Pa. 141. This is particularly so where the publications complained of are in a series of articles over a long period of time. The manner of publication of the alleged libelous articles, the persistence of the publications on the subject and the coloring of the comments in the publications all have a bearing on the libelous quality of the words used. See Luckock v. Daily News Publishing Company, 74 Pa. Superior Ct. 429.

Libel of a corporate body consists of a malicious publication written, printed or painted, which by words or signs tended to injure the corporation in the conduct of its business or in its business reputation. See Victory Cab Association v. Philadelphia Daily News, Inc., 76 D. & C. 96; Erick Bowman Remedy Co., Inc., v. Jensen Salsbery Laboratories, Inc., 17 F. Supp. 255; Temperance Mutual Benefit Association v. Schweinhard, 3 Pa. C. C. 353; Restatement of Torts, Defamation, §561. The malice in libel is legal malice and does not necessarily mean a particular spite or grudge. See O'Donnell v. Philadelphia Record Company, 356 Pa. 307.

The general law of libel holds that published words are libelous per se when they are such words as apparently, and upon the face of them, import such defamation that injury follows as a matter of course. One dictionary definition is given in Black's Law Dictionary, 4th edition, which says that:

"A publication is libelous *per se* when the words are of such a character that an action may be brought upon them without the necessity of showing any special damage, the imputation being such that the law will presume that anyone so slandered must have suffered damage": page 1062.

In Pennsylvania, published words are libelous per se when they are so obviously defamatory that the law presumes injury or damages have resulted from their publication.

In the instant case, the publications complained of related to the real estate owned by a nonprofit corporation and used by its members. The statement that "this place will be a slum under the present tactics" is libelous per se. Such a statement is so obviously defamatory that the law presumes that injury or damages have resulted from its publication. Such words are actionable without the pleading of special damages.

Plaintiff complains of many other statements published by defendant. Of the ones complained of, those charging that the housing association hired an unqualified attorney-at-law, used favoritism in assigning apartment units, made excessive expenditures for maintenance and failed to carry insurance protection are capable of a libelous meaning. Being capable of such a meaning it is the province of the jury to determine whether they had such a meaning in fact. The statements which are merely capable of a libelous meaning are not libelous per se. Insofar as plaintiffs

complaint relies upon words or statements not libelous per se it must allege special damages. An examination of plaintiff's complaint shows that in paragraphs 9, 10 and 11, special damages are pleaded. Paragraph 9 pleads loss of business reputation. Paragraph 10 pleads loss of revenue and added expenses in the past, and paragraph 11 pleads loss of revenue in the future. While these allegations of damages are not pleaded with the particularity required for the pleading of special damages in an action for trespass for libel, defendant's preliminary objection does not ask for a more specific statement as to damages but attempts to attack the generality of the pleading of special damages by way of a demurrer. In considering the demurrer the court must assume that the allegations pleaded are proved. This does not mean that they are proved but for the purpose of preliminary decision they are conceded to be proved. Viewed in this light the complaint sets forth the publication of words which are capable of being libelous for which recited special damages are claimed.

The complaint in this case alleges publications, one of which is libelous per se, others of which are capable of libelous meaning. The complaint pleads special damages. It sets forth a sufficient cause of action and the demurrer will therefore be overruled.

Defendant in its second preliminary objection raises the defense of lack of capacity in plaintiff to sue. As part (A) of this objection, defendant claims that, although plaintiff is a nonprofit corporation duly incorporated under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §2851-1 et seq., it is a cooperative association and is improperly incorporated under the nonprofit corporation law. The records of this court show that a nonprofit corporation charter was granted to a "Munhall-Homestead's Housing Association" under the nonprofit cor-

poration law at no. 2096, July term, 1955, and that said charter was recorded in the Office of the Recorder of Deeds of Allegheny County in charter book 75, page 462.

Defendant claims that since the nonprofit corporation law expressly does not apply to cooperative associations, whether for profit or not for profit (15 PS §2851-4) and since the Act of June 7, 1887, P. L. 365, 14 PS §1, makes sole provision for the incorporating of cooperative associations, plaintiff corporation does not exist and, therefore, has not the capacity to sue.

Article II, sec. 201, of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §2851-201, provides that a nonprofit corporation may be formed "for any purpose or purposes which are lawful and not injurious to the community."

The pleadings are completely void of any indication that the Munhall Homestead Housing Association, plaintiff, was incorporated for any unlawful purpose or for any purpose injurious to the community. The record indicates that plaintiff was incorporated for a lawful purpose and for the benefit of the community. The fact that plaintiff is also known as the "Project" and the "Co-Op," meaning cooperative ownership, does not of itself operate to vitiate the existing charter. The validity of a charter cannot be determined in a collateral suit. See Spahr v. Farmers' Bank, 94 Pa. 429, and Kulp v. Public Service Commission, 82 Pa. Superior Ct. 83. This part (A) of defendant's preliminary objections cannot be sustained.

In part (B) of its preliminary objections, defendant claims that a nonprofit corporation not depending upon the public for financial support has no standing to sue for libel.

No Pennsylvania case has been located treating this precise question. There are Pennsylvania cases holding that an unincorporated nonprofit association may

maintain an action for libel. See Hotel, Restaurant, Union v. Hotel & Club Employment Union, 56 D. & C. 575, and Americans for Democratic Action v. Meade, 72 D. & C. 306; the latter case cites similar cases in the jurisdictions of New York, Massachusetts and British Columbia. The mere fact that an association of persons become incorporated into a nonprofit corporation could not possibly cause a surrender of the right of capacity to sue for libel. A nonprofit corporation is granted by statute "the capacity to act possessed by natural persons."

Section 301 of the Nonprofit Corporation Law of May 5, 1933, provides as follows:

"A nonprofit corporation shall have the capacity to act possessed by natural persons, but shall have authority to perform only such acts as are necessary or proper to accomplish the purpose or purposes for which it is organized and which are not repugnant to law": 15 PS §2851-301.

Such a corporation expressly has the power "to sue and be sued, complain and defend, in its corporate name": 15 PS §2851-302(2).

It has been held that a nonprofit corporation can maintain a suit for libel where the publication reflects on the management of its business, attacks it in its method of conducting its affairs, or accuses it of fraud or mismanagement, if reasonably calculated to cause it pecuniary loss. See DuPont Engraving Company v. Nashville Banner Publishing Co., 13 F. 2d 186 (189). Article III, sec. 309, of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, covers the matter of transaction of business by a nonprofit corporation. Said section states as follows:

"Any nonprofit corporation, the lawful activities of which require the receipt and payment of money, including among other things the charging of admission fees, tuition or other school fees, and fees for the handi-

work of members of the corporation, shall have the right and power to receive and collect such moneys to the extent necessary for the accomplishment of the purpose or purposes for which it is organized, and, in so doing, may make an incidental profit. All moneys so received or collected by any nonprofit corporation shall be applied to the maintenance and operation or the furtherance of the lawful activities of the corporation, and in no case shall such moneys be divided or distributed in any manner whatsoever among the members of the corporation."

The activities of the Munhall Homestead Housing Association, plaintiff herein, require the receipt and payment of money. One of its legitimate goals should be to make sufficient incidental profit to accumulate adequate reserves, and the more successful its operation may be the greater benefits it can return to its members in the form of community facilities and services. At the argument it was developed that plaintiff association was carrying a mortgage on its property. The payment of this mortgage is an important business of the association. In 1887, Judge McPherson decided a case in Lebanon County which, while not deciding the precise question before us, decided substantially the same thing. In that case he held that an incorporated mutual beneficial association could bring an action for slander. He pointed out that, in his judgment, the principle is the same whether the words be spoken or written. He said:

". . . The principle is the same, whether the words be spoken or written; the important matter is their effect, and if it appear that they have done pecuniary harm to a business, the law ought to provide a remedy, whether the organ of expression be the mouth or the hand, and whether the business be that of an individual or of a corporation": Temperance Mutual Benefit Association v. Schweinhard, 3 Pa. C C. 353, 354.

This case is cited with approval in Victory Cab Association v. Philadelphia Daily News, Inc., 76 D. & C. 96. Defendant would have the court limit the right of nonprofit corporations to sue for libel to those which are "dependent upon the public for financial support." Defendant's reasoning is that fraternal beneficial associations and labor unions are dependent upon the public for financial support and thereby acquire capacity to sue for libel. Defendant offers no proof of his position and we doubt that the members of such associations would agree that they are supported by the public. Defendant would class such associations and unions with a charitable school or hospital. This does not appear to us to be sound reasoning. Any nonprofit corporation transacting business as a part of its lawful activities has a right in its good business reputation and management whether it is supported by the public at large or by its own members.

Defendant cites the Restatement of Torts, §561 (2), which reads as follows:

"One who falsely, and without a privilege to do so, publishes of a corporation not for profit which depends upon the financial support of the public, matter which tends to prejudice it in public estimation and thereby to interfere with the conduct of its activities is liable to the corporation. . . ."

The restatement does not in any way indicate that a corporation which is supported by its members is not entitled to bring an action for libel and were it to do so we feel that it would not be in harmony with the law of Pennsylvania. For these reasons defendant's second preliminary objection will be overruled.

Defendant's third preliminary objection claims that the innuendos recited in the complaint are unreasonable, impertinent, and contrary to law. His preliminary objection to them is in the nature of a motion to strike the innuendos because of lack of conformity

to law. Rule 1017 of the Pennsylvania Rules of Civil Procedure provides for the striking of portions of a pleading because of lack of conformity to law. Based upon the argument as set forth in its brief, it appears to us that defendant is attacking portions of the complaint by a motion to strike when it should be attacking them by a demurrer; however, we will consider defendant's objection to the innuendos. Plaintiff sets forth some 32 statements and 26 innuendos in its complaint. Innuendos cannot enlarge or change the meaning of libelous words. In McAndrew v. Scranton Republican Publishing Company, 364 Pa. 504, the court said:

"It is elementary that 'An innuendo, however, can never add to nor change the [alleged] meaning of the defamatory statement, or operate as an averment, imparting into the statement anything which is not a usual and natural presumption from the precedent words' ": page 511.

In Sarkees v. Warner-West Corporation, 349 Pa. 365, the court said, at page 367:

"The innuendo must be warranted, justified and supported by the publication. In Naulty v. Bulletin Company, 206 Pa. 128, 55 A. 862, we stated: 'The purpose of an innuendo, as is well understood, is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff: Price v. Conway, 134 Pa. 340. But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear: Hackett v. Providence Telegram Publishing Co., 18 R.I. 589. It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible

of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury.' See Ringer v. Winner, 309 Pa. 270, 163 A. 519."

Inasmuch as this action involves a series of publications, it is not possible to rule preliminarily whether each and every innuendo should be the subject of testimony and submitted to the jury. We have held earlier in this opinion that the objectionable statements relating to the hiring of an unqualified lawyer, using favoritism in the assigning of apartments, making excessive expenditures for maintenance, and failing to carry adequate insurance protection, are capable of a libelous meaning. All of the statements made by defendant which are relevant to these charges are for the consideration and handling by the trial judge. It is not possible to rule upon each and every statement preliminarily on an objection to strike from the record. As to the statements complained of in the complaint, the test to be applied to them is set forth by Justice Horace Stern in Boyer v. Pitt Publishing Company, 324 Pa. 154, 157:

". . . The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are likely to attribute to them. It is for the court to determine whether a publication is fairly and reasonably *capable* of the meaning imputed to it by the innuendo, leaving it to the jury to say whether it *actually* conveys the meaning so ascribed to it."

Where the action is based upon a series of publications, the possible interrelationship of the articles cannot be determined preliminarily as a matter of law. Such relationship if it does exist can be best determined at the time of the trial by the judge then presiding.

The third preliminary objection of defendant will therefore be overruled.

*Order of Court*

And now, May 22, 1961, after argument and consideration of briefs filed, it is ordered that defendant's preliminary objections be and are overruled and defendant is given 20 days in which to file an answer.